THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

AMELIA MAEHL.

*Filed at Springfield October 31, 1889.*

1. NEGLIGENCE—*competency of engineer—evidence on that question.* In an action by a widow against a mining company, to recover for the death of her husband through negligence, the plaintiff showed, by the engineer of defendant, that he had run the engine connected with the hoisting apparatus at the mine, for two months prior to the accident, and, over defendant's objection, he was allowed to testify to his want of experience and competency at the time of his employment, and as to what proficiency he had attained as an engineer in that time, the injury having resulted from the alleged incompetency of the engineer: *Held*, that the evidence was proper, as tending to show, from his previous training and experience, or want of it, whether the engineer was competent and experienced at the time of the injury.

2. SAME—*instruction varying from the pleadings—presumption.* In the same case, an instruction for the plaintiff, after correctly stating the duties of mining corporations under the statute, told the jury, that if they believed, from the evidence, that the defendant had willfully failed to comply with its duty, or willfully violated the provisions of the statute, as alleged in the declaration, the defendant was liable, if the other necessary facts, which were named, concurred. Two counts of the declaration were faulty, and did not state defendant's duty correctly, but no evidence was heard under such counts: *Held*, that while the instruction was not to be commended, there was no prejudicial error in giving it, as it would be presumed the jury looked to the breach of duty stated in the instruction, and not to that alleged in the faulty counts.

3. MEASURE OF DAMAGES—*death from negligence—instruction.* In an action to recover damages occasioned by the death of a person from negligence, an instruction for the plaintiff, after having left it to the jury to be found, from the evidence, whether the deceased had children, and the plaintiff was his widow, told them, that if they further believed, from the evidence, "that if the plaintiff had been damaged by reason of the loss of the life" of her husband, "then the jury will find the defendant guilty," and in "establishing said damages the jury may take into consideration that the deceased left surviving, said children, in addition to the plaintiff, his widow." In the next instruction the rule of law as to the measure of damages was correctly stated, and limited the recovery to the pecuniary loss sustained by the plaintiff: *Held,* that, taking the two instructions together, there was no prejudicial error. The first was not intended as an instruction upon the measure of damages.

4. PRACTICE—*submitting special questions of fact to the jury.* On the trial in an action to recover damages from a mining company for causing the death of the plaintiff's husband, the plaintiff, by evidence introduced by her, and by instructions, abandoned all other charges in her declaration except that of defective hoisting machinery and want of lights in the shaft where the injury was received. The defendant asked the court to submit to the jury certain special questions as to whether the death of the plaintiff's husband was caused by certain other omissions of this defendant, which was refused: *Held,* as no recovery was sought on the grounds upon which the special questions were based, there was no error in refusing the motion.

5. SAME—*sending jury back to consider further of their verdict.* After a cause had been submitted to a jury, it was agreed that they might, when they should agree, seal their verdict and separate, and meet the court on the following morning. On the reconvening of court the jury were present, and answered to their names, and the verdict was handed to the judge, who, on finding they had failed to answer certain questions, directed the jury to retire and further consider of their verdict, and return answers to the questions submitted to them. Upon their return their verdict and answers were read, and the court polled them, and each answered, "these were their verdicts:" *Held,* no error in sending the jury back to return a proper verdict.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. CHARLES W. THOMAS, for the appellant.

Mr. B. R. BURROUGHS, and Mr. GEORGE L. ZINK, for the appellee.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This suit was brought in the Macoupin circuit court, by appellee, to recover pecuniary damages for the loss occasioned by the death of her husband, John Maehl, at the mines of appellant, as it was alleged, through the negligence of appellant, and its failure to perform its legal duty in respect of said mines and the operation thereof. A trial resulted in a verdict for plaintiff for $5000. Motion for new trial was overruled, and judgment entered on the verdict. On appeal to the Appellate Court this judgment was affirmed, and the defendant below prosecutes this further appeal.

Four reasons are urged why the judgment should be reversed, which we will notice in the order presented by counsel:

*First*—That the court erred in giving the first of plaintiff's instructions. The first criticism of the instruction is, that it tells the jury to find the defendant guilty, if they believe, from the evidence, it violated any of the provisions of the statute "as stated in the declaration;" and that, as the second, fourth and seventh counts of the declaration did not state the law correctly, or state such facts as would show a legal liability on the part of appellant, the instruction was improperly given. The second count of the declaration alleges the failure of the defendant to keep a competent person at the top and bottom of the shaft, to attend to signals, and that Maehl was killed by reason of defendant's failure to discharge that duty, while the statute requires, only, that such person be so placed while coal is being hoisted, or within thirty minutes before or after that operation begins and concludes,—the fact proven being, that coal was not being hoisted, and that it was an hour and a half before the hoisting would begin when Maehl was killed. The seventh count proceeds on the same theory.

We are of opinion that the criticism of the instruction in the respect stated is not warranted. It begins: "The court instructs the jury, that the statute of this State makes it the duty of persons and corporations operating coal mines by shafts and steam power, among other things, first, to provide safe means of hoisting and lowering persons in a cage covered with boiler iron, so as to keep safe, as far as possible, persons descending into and ascending out of such shaft; second, to provide every drum with a sufficient brake, to prevent accident in case of the giving out of the machinery; third, to furnish a sufficient light at top and bottom of the shaft to insure, as far as possible, the safety of persons getting on or off the cage; and fourth, not to place in charge of any engine whereby men are lowered into or hoisted from the mine, any other than a competent, experienced and sober engineer, not less than eighteen years of age."

No fault is found with the statement of the requirements of the statute, but, as before seen, it is objected that the jury were referred, generally, to the declaration for the law. A casual reading of the instruction will demonstrate the fallacy of this contention. After stating the duty of persons operating such mines, as before stated, the instruction then tells the jury, that if they believe, from the evidence, that the defendant was operating the mine, and that Maehl was killed in the manner alleged, that he left plaintiff as his widow, etc., and that Maehl was in the service of defendant, working in said mines, proceeds: "And if the jury believe further, from the evidence, that at the time said Maehl was so killed the defendant then and there willfully refused, or willfully failed, to comply with its duty under the said provisions of the said statute, or willfully violated any of the said provisions of said statute, as stated in said declaration," and the death of Maehl was caused by reason of such willful refusal or willful neglect, and damage is found from the evidence to have accrued to plaintiff, then they should find defendant guilty," etc. The instruction is incor-

rectly given in the abstract, but upon looking at the record it is found that the attention of the jury is alone directed to the provisions of the statute, or requirements of it, stated in the fore part of the same instruction.     The statutory obligations were first given, and the jury told that if they believed, from the evidence, that defendants had willfully failed to comply with its duty, or willfully violated said provisions of said statute, as (in the manner) alleged in the declaration, the defendant will be liable, if the other necessary facts concurred.   It seems impossible that the jury could have understood this instruction in any other way.   It is to be observed that the instruction omits any reference to the statutory duty to keep at the bottom and top of the shaft, while coal is being hoisted, and for thirty minutes before such hoisting is to begin, a competent person to attend to signals, and the jury could not, we think, have understood the instruction as in any way referring to the matters alleged in the second and seventh counts of the declaration.   This view becomes more pronounced when we consider that the first witness who testified in respect of the condition of the mine and the injury to Maehl, showed that the injury occurred at a time when no signal-men were required by law to be kept at the shaft, and thereupon the court, on the objection of appellant, refused to permit appellee to prove that no signal-man was on duty, and the record is barren of any evidence on that subject.   While the instruction in the form given *is not to be commended,* we are unable to perceive prejudicial error in the respect indicated.

It is also urged that this instruction is faulty in further stating, that "if the jury further believe, from the evidence, that the plaintiff has been damaged by reason of the loss of the life of the said John Maehl, then the jury will find the defendant guilty," and in "estimating said damages the jury may take into consideration that Maehl left surviving him said children, in addition to the plaintiff, his widow."   Whether said Maehl had left children, and plaintiff as his widow, had in a former

portion of the instruction been left to the jury, to be found from the evidence. It is not claimed that the inclusion of the element in respect of the children is erroneous, (*Beard et al.* v. *Skeldon*, 113 Ill. 584,) but it is said the jury are thereby left free to award damages for all loss, not confining it to pecuniary damage. It is conceded that the instruction is not accurate, but it was not intended as an instruction upon the measure of damages, while the next instruction was so intended, and states the rule clearly and correctly. Taking the two instructions, the law was stated with substantial accuracy, and properly limited the recovery to the pecuniary loss sustained by the plaintiff. There was, therefore, no prejudicial error in this regard.

*Second*—The engineer testified that he had run the engine connected with the hoisting apparatus at this mine, for two months prior to the injury of Maehl, and, over appellant's objection, was permitted to testify to his want of experience and competency at the time of his employment, and to what proficiency he had attained as an engineer in that time. This, it is insisted, was error, and tended to the prejudice of appellant. We think that in so far as it tended to show his capacity at the time of the accident, it was clearly competent. It was for the jury to say, if they found that the injury resulted through the fault or negligence of the engineer, whether he was a competent, experienced and sober engineer, such as appellant was required to place in charge of its engine used in lowering into or hoisting persons from the mines. His previous training and experience, or want of it, would furnish one means by which a conclusion might be reached. But aside from this, the jury, by their second special finding, expressly found that Maehl's death was not caused by the negligence of the engineer, and it can not be seen that this evidence, if improper, could have prejudiced appellant.

*Third*—Appellant requested the submission to the jury of five questions, to be answered by special verdicts. The court

gave two of them, but refused the first, second and third thereof, which are as follows :

1. "Was Maehl's death caused by the willful neglect of defendant to place a man at the bottom of the shaft for the purpose of preventing men from carrying tools or material with them on the cage?"

2. "Did the accident by which Maehl was killed, occur more than thirty minutes before the hoisting of coal commenced in the morning of that day, and more than thirty minutes after such hoisting had ceased for the night before?"

3. "Was Maehl's death caused by the willful neglect of defendant to place a man at the top of the shaft to attend to signals?"

This refusal is assigned for error. We have to some extent anticipated the answer to this contention. It is manifest that the failure of the defendant company to keep a competent person at the top and another at the bottom of the shaft was not insisted upon. The evidence, as already said, tending to prove a failure in this respect, had been refused admission. The plaintiff, in her instructions, when giving the legal duty of the defendant, had, as we have seen, wholly omitted any mention of the duty to so keep persons at the shaft, and we think the court, in the exercise of its discretion, was warranted in holding that the special findings requested and refused were not, "upon any material question or questions of fact," within the contemplation of the act in relation to special verdicts.

While the finding of the Appellate Court as to questions of fact is binding and conclusive upon this court, we have, as we may, to determine whether the law has been correctly applied, looked into the facts, and it is, as said by the Appellate Court, apparent "that all other charges in the declaration, except that of defective machinery and want of lights, were practically abandoned during the trial." We are of opinion that the court did not err in refusing the requests for such special findings.

*Fourth*—After the case went to the jury, by agreement of the parties, the jury, when they had agreed upon a verdict, were permitted to seal their verdict, and separate, and meet the court on the following morning. On the re-assembling of court the jury was present in court and answered to their names, and the sealed verdict was handed to the judge, who, upon opening the same, and finding that the jury had failed to return the special verdicts required, against the objections of appellant, ordered the jury to retire and further consider of their verdict, and to return answers to the three questions submitted for special verdicts. Upon their return into court the court read the general and special verdicts, and polled the jury, each of whom answered "that these were their verdicts." It is apparent the jury was not discharged. They were to meet the court at the hour of convening on the following morning, and were in attendance. It was, we think, correct practice for the court to require them to again retire and return a proper verdict, and having done so, to discharge them.

Finding no error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*