## Grace & Hyde Company v. Fred C. Sanborn.

### Gen. No. 12,183.

1. VERDICT—*court has power to authorize sealing of.* The court has power notwithstanding the absence of counsel to authorize the jury to return a sealed verdict and to separate.

2. JURY—*court has power to order second retirement of.* The court, after the jury have returned a sealed verdict and separate, may direct them again to retire and severally sign answers to special interrogatories which as returned were signed only by the foreman.

3. PEREMPTORY INSTRUCTION—*when motion for, appropriate method of reaching defective declaration.* A motion for a peremptory instruction is a proper way to reach a defect in a declaration where such defect is of a character to require an arrest of judgment.

4. DECLARATION—*what primary test in determining whether, sufficient to support verdict.* The primary test as to whether a declaration is sufficient to support a verdict is whether it by reasonably intelligible allegations apprises the opposing party of the case to be made against him.

5. DECLARATION—*when sets up cause of action.* A declaration sets up a cause of action which alleges that the defendant was constructing a building, that it employed the defendant as a laborer to do work for it on said building and near to a derrick that was used to unload iron columns from a car near said building, that while the plaintiff was discharging his necessary duties in the employment of the defendant, the derrick, by reason of the carelessness and negligence of the defendant, fell down on the plaintiff and injured him.

6. ASSUMED RISK—*when question is one of law.* If, conceding to be true all that the evidence tends to prove in favor of the plaintiff, it would be apparent to all reasonable minds that such dangers as the evidence thus tends to prove, were incidental to and connected with his employment, that they were not concealed or latent, but patent and obvious, that they were not extraordinary

Grace & Hyde Co. v. Sanborn.

and unusual, but usual and incident to the business engaged in as conducted by the defendant, and existed continuously during the plaintiff's employment, and if there is no evidence tending to show that plaintiff ever complained of them or that the defendant had promised to remedy them, or that the plaintiff had been ordered to incur them by some particular and especial order at the time of the accident, but on the contrary it is proven that he was then engaged in the regular line of his duties and usual employment and that he was of mature age and of ordinary strength and intelligence, then the question of whether he understood and appreciated the danger is answered by a conclusive presumption, and the assumption of risk by the plaintiff becomes a matter of law for the court to assert.

7. SPECIAL INTERROGATORY—*when properly refused.* A special interrogatory which does not concern an ultimate fact and which is not decisive of the case, is properly refused.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

**Statement by the Court.** This appeal is from a judgment of the Superior Court of Cook county for $21,450 against the appellant in favor of the appellee. The judgment was rendered November 11, 1904, on the verdict of a jury in an action for personal injuries.

The declaration originally filed in the cause, February 21, 1902, was in one count, and alleged that the defendant was engaged December 27, 1901, in erecting structural iron work upon a building then in course of construction at or near the corner of Polk street and Pacific avenue, in Chicago; that the plaintiff was employed by defendant in the capacity of an iron worker to do certain work for it on said building; that in the usual and ordinary course of his occupation, and by direction of defendant's foreman in charge of the work, the plaintiff was winding a cable upon a windlass attached to a derrick used by defendant to unload certain columns of iron and other iron work from a car near by; that "defendant carelessly and negligently disregarding its duty in that behalf, provided plaintiff with an unsafe and insecure place in and around which to work, and that in consequence of its

said negligence and carelessness by and through its servants
in constructing and operating the said derrick, and while
plaintiff was at work as aforesaid, and was in the exercise
of ordinary care and caution for his own safety, the said der-
rick fell down upon and against plaintiff with great force and
violence," and that the plaintiff was permanently very se-
verely and dangerously injured thereby. To this declaration
the defendant filed a plea of not guilty in March, 1902. In
May, 1902, the plaintiff was given leave to file additional
counts to his declaration, and on May 9, 1902, filed two
additional counts. The first of these he withdrew from the
consideration of the jury in open court by discontinuance as
to said count before any evidence was offered. The second
additional count alleged that the defendant was engaged in
the business of constructing a building at Polk street and
Pacific avenue in Chicago, and that December 27, 1901, the
plaintiff was employed by defendant in the capacity of a
laborer to do certain work for the defendant upon, in, around
and near said building, and near to a certain derrick in the
possession of and used and operated by defendant to unload
certain iron columns and other iron work from a car standing
upon a track near said building; that while plaintiff, in the
exercise of ordinary care on his part, was in the necessary
discharge of his duty as an employee of defendant at and
near said building, said derrick, by reason of the carelessness
and negligence of defendant, fell down upon the plaintiff
and injured him.

The case came to trial before a jury with these two counts
in the declaration, the original count and the second addi-
tional count, June 21, 1904.

At the close of the plaintiff's evidence the defendant moved
the court to exclude all the evidence from the jury and to
instruct the jury to find the defendant not guilty. This
motion the court denied. The defendant declined to intro-
duce any evidence, and after announcing that it rested its
case, renewed and again urged its motion to direct a verdict
for the defendant, which the court again denied.

At the request of the plaintiff the court then gave to the

jury an instruction which was numbered 1.    At the request of the defendant it gave thirty-four, numbered from 2 to 35. Number 35 was as follows:

"The court instructs the jury that under the law and the evidence of this case, the plaintiff cannot recover under the original declaration filed in this case, and as to that count your verdict should be not guilty."

The defendant excepted to the giving of instruction No. 1, and the plaintiff excepted to the giving of instruction No. 35.

The court refused six instructions, numbered from 36 to 41, which were tendered by the defendant.    It refused to submit to the jury for their answer two specific interrogatories, but submitted apparently in substitution therefor, as of its own motion, three such specific interrogatories.

The jury retired to consider their verdict at 2:30 P. M., Friday, June 24, 1904.    After the jury had retired, in the absence of counsel for either party, the court instructed a bailiff to advise the jury that they might return a sealed verdict and then report to the court at 10 A. M., Monday, June 27, 1904.    At 5:30 P. M., Friday, June 24, 1904, in the absence of defendant's attorneys, the jury having arrived at a verdict, sealed the same, left it with the officer for the clerk, and separated with instructions to report to the court at 10 A. M., Monday, June 27, 1904.    On Monday, June 27, 1904, the defendant took exceptions to all of the foregoing proceedings in relation to a sealed verdict and the discharge of the jury.    At 10 A. M., Monday, June 27, 1904, the jurors being all present in the box, the clerk produced the sealed envelope and read the general verdict finding the defendant guilty and assessing the plaintiff's damages at $21,-100.    This verdict seems to have been signed by all the jurors.    He also read the special findings, being the answer to the three interrogatories submitted to the jury by the court as hereinbefore noted, but these findings were signed by only one juror as foreman.    Counsel for plaintiff requesting it, the court instructed the jury to retire and directed them all

"to sign the special verdict—if that was their verdict."
Counsel for defendant objected to this and excepted.    After
an absence of ten minutes the jury returned into court and
presented the clerk with certain papers.    By direction of the
court the clerk read again the general verdict and also read
the special findings—both being at this time signed by all
the jurors.

On the same day, June 27, 1904, the defendant moved
for a new trial and the plaintiff moved for leave to file two
additional counts to his declaration.    Both motions were con-
tinued from time to time until November 11, 1904, when the
plaintiff, by leave of court, withdrew his motion for leave to
file additional counts, and the defendant's motion for a new
trial was overruled.    A motion in arrest of judgment was
also made by defendant and overruled by the court.    The
court thereupon entered judgment upon the verdict with in-
terest, amounting in the aggregate to $21,450.

In this court, the appellant has assigned errors covering
alleged erroneous rulings of the trial court in not granting a
new trial because the verdict was against the weight of the
evidence and inconsistent with the instructions of the court;
in admitting improper evidence; in denying the motions of
the defendant to take the case from the jury; in giving in-
struction No. 1 tendered by the plaintiff; in refusing in-
structions No. 37 to 41, as tendered by the defendant; in re-
fusing to give to the jury for answer the interrogatories for
special findings, tendered by defendant; in not setting aside
the verdict because the damages assessed by the jury were ex-
cessive; in allowing, in the absence of the attorneys for the
defendant, the jury to return a sealed verdict and separate
without any agreement thereto on the part of the defendant
or its attorney, and in directing the jurymen to retire and
each sign the answers to the special interrogatories, after they
had been once returned into court; also in overruling the
motion in arrest of judgment made on the ground that the
plaintiff's additional count to the declaration failed to state
a cause of action upon which judgment could be rendered.

The plaintiff—appellee here—has assigned the cross error

that the court erred in giving instruction 35, hereinbefore recited.

F. J. CANTY, E. E. GRAY, J. C. M. CLOW and WILLIAM BURRY, for appellant; H. E. LONG, of counsel.

JOHN F. WATERS and C. H. JOHNSON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

It is urged in argument by the appellant's counsel in this case that the trial judge in the Superior Court committed an error vitiating the verdict and judgment by allowing and authorizing the jury, without the consent and in the absence of the defendant's counsel, to seal their verdict and separate on June 24, 1904. The point is not well taken. It has long been settled to the contrary in this State. Mains v. Cosner, 62 Ill., 465; City of Chicago v. Langlass, 66 Ill., 361; C. C. C. & St. L. Ry. Co. v. Monaghan, 140 Ill., 474.

Again, it is said that another error was committed by the trial judge on Monday morning, June 27th, when the court and jury reconvened, in allowing and instructing the jury to retire again and sign the answers to the special interrogatories which they had sealed up and delivered into court signed by their foreman only. No authority is cited to show this action erroneous, and we are sure none can be found. It certainly could not have been erroneous, for it has been expressly held that under similar circumstances the jury may be sent out to frame, record and bring in answers to special interrogatories which they have entirely neglected to notice in sealing and rendering their general verdict before separation.

MR. JUSTICE SHOPE in the Supreme Court in Consolidated Coal Co. v. Maehl, 130 Ill., 551, says of such a proceeding: "It is apparent the jury were not discharged; it was correct practice." Mr. Justice Sears of this court, in C. & A. R. R. Co. v. Reilly, 75 Ill. App., 125, says it would have been the proper practice in that case, and the learned judge in the case of the Consolidated Coal Co. v. Maehl, when decided in the Appellate Court for the Third District, 31 Ill. App.,

252, says: "The court in sending the jury out to complete their verdict committed no error, but was clearly acting within a proper discretion."

By one of the appellant's assignments of error it is charged that the amount of damages assessed by the jury is highly excessive and that the court therefore erred in not setting it aside. But this is not argued and therefore may be considered waived. Plaintiff's injuries were extraordinarily severe and were permanent. In addition to their extremely painful character and the plaintiff's long continuance in bodily suffering, which at the time of the trial had not ceased, there is to be considered his transformation from a healthy young man, qualified for skillful artisanship, into an entirely incurable cripple, pitiably paralyzed and helpless.

The attack upon the judgment most strongly pressed by the appellant is not, however, concerned with its amount or even with the conduct of the trial from which it resulted, (although objections to various rulings of the trial judge are made and will be hereinafter noted and disposed of), but is based upon the proposition that a cause of action is neither stated by the plaintiff's pleadings nor established by plaintiff's proofs, and that the judgment is necessarily, therefore, on a double ground erroneous.

It is said that the only declaration on which the case went to the jury was the second additional count, so called, set forth in the preceding statement, and that this count stated no cause of action. For this reason the appellant claims that the motion in arrest of judgment should have been granted, and that for the same reason the proposed instruction No. 41, taking the cause from the jury, should have been given. Instruction 41 should have been given in any event, it is urged, when the evidence had disclosed the actual circumstances of the accident. But it is further insisted that there is no need, in order to justify the proposed instruction, to consider the evidence, inasmuch as the pleadings of the plaintiff furnished no legal basis for a verdict either before or after it was given.

The "2nd additional count" must, therefore, be examined

Grace & Hyde Co. v. Sanborn.

in connection with the refused peremptory instruction, as well as the motion in arrest of judgment, with the view of ascertaining whether or not it is a good declaration after verdict. The proposed instruction, although requested before the verdict, was a proper way to reach a defect in the declaration only if the defect were sufficient to require an arrest of judgment if a verdict were returned. Otherwise, it was necessary to challenge it by demurrer. Consolidated Coal Co. v. Scheiber, 167 Ill., 539; B. & O. S. W. Ry. Co. v. Keck, 185 Ill., 400, 402.

We are not concerned, therefore, with the question whether the second additional count was demurrable, but whether it will support a judgment after verdict.

A declaration which states no cause of action will not sustain such a judgment. Even after verdict in such case, judgment should be arrested because of the want of a sufficient pleading on the plaintiff's part. On the other hand, many declarations which are defective statements of a cause of action, and which on proper demurrer could not be sustained, are good after verdict. Especially is this true in actions of tort for negligence, where the fault of the declaration is the generality of the statement concerning the negligence charged.

It is not altogether easy to draw with precision the line on one side of which will fall declarations, which, because of the generality of their language, state no cause of action, and on the other side declarations which, for the same reason, defectively state causes of action. Starting, however, from the reasonable proposition which is the basis of the rules of pleading, as it exists to-day, that the main purpose of pleading in courts of law is accomplished when, by reasonably intelligible allegations, the opposing party is advised of the case to be made against him, and giving due weight to the approved doctrine of Chitty, that in declarations "certainty to a certain intent in general," that is, "what upon a fair and reasonable construction may be called certain, without recurring to possible facts which do not appear," and due weight also to several decisions of the Su-

preme Court of Illinois in recent years, we think it must be said that after verdict the second additional count in the case at bar will sustain a judgment, and that it is at the worst a defective statement of a valid cause of action.

The count alleges that defendant was constructing a building, that it employed the plaintiff as a laborer to do work for it on said building, and near to a derrick that was used to unload iron columns from a car near said building, that while the plaintiff was discharging his necessary duties in the employment of the defendant, the derrick, by reason of the carelessness and negligence of the defendant, fell down on the plaintiff and badly injured him.

Technical rules of pleading apart, we think that no one familiar with the use of the English language could fail to gather from such a charge that the defendant was, as an employer, accused of a breach of the duty of furnishing to the plaintiff a safe place to work and safe appliances in connection with his employment. It is certainly true that it leaves much to be desired in particularly describing the negligence or carelessness which caused the derrick to fall, which might have been some act of commission, or might have been an act of omission, or possibly both.

But coming to the rules of pleading, is not the charge "upon a fair and reasonable construction" "without recurring to possible facts which do not appear," certain enough to so inform the defendant of the case proposed to be made as to enable it to prepare its defense on the merits? Is there much greater indefiniteness in it than in the allegation in the case of the Chicago City Ry. Co. v. Jennings, 157 Ill., 276, that the defendant so carelessly and improperly drove and managed a motor and train of cars that they ran into and struck the plaintiff's carriage, an allegation judged to be a good pleading even as against a special demurrer? And is there any distinction in this regard that can be reasonably drawn to the disadvantage of the allegation we are discussing in this case, between it and those the approval of which by various authorities is cited with approbation in the Jennings case? The form from Chitty given is that defendant's boat

Grace & Hyde Co. v. Sanborn.

"by his carelessness, mismanagement and want of care, struck plaintiff's vessel;" another approved is that a defendant railroad company "did carelessly and negligently run over" the plaintiff; another, that the defendant by "carelessness, negligence, unskillfulness and mismanagement" "wrongfully" "ran a locomotive against plaintiff's horse and wagon;" a fourth, that the defendant negligently, carelessly and wrongfully caused a train of cars to be driven upon the cattle of the plaintiff; and still another that an engineer so recklessly, negligently and unskillfully managed an engine and boilers that one of the boilers exploded and the plaintiff's intestate was killed.

Language of other courts, moreover, is quoted approvingly in the Jennings case, to the effect that a general allegation of negligence or carelessness as applied to the act of a party is not a mere conclusion of law, but is a statement of an ultimate fact allowed to be pleaded, and that such a general form of pleading negligence seems to have been permissible in common law pleading; and again, that there is no necessity for a declaration to specify the acts of omission or commission which constitute the negligence of the defendant which is the basis of the action, it being neither usual nor necessary to specify the acts or omissions of the defendant which constitute the negligence, that being a matter of proof merely. The question, however, of the strength of the count under discussion against a demurrer, under the doctrine of the Jennings case is merely academic, for, as we have noted, we are concerned here only to determine whether it will support a judgment after verdict. On this question there are authorities which seem to us conclusive.

In C., B. & Q. R. R. Co. v. Harwood, 90 Ill., 426, the court, speaking of the objection that specific acts of carelessness were not alleged in the declaration, but that careless and improper management only were alleged, says: "Carelessness and impropriety are not descriptive of specific acts, but of a class of acts only, which may include an indefinite number of specific acts, each differing in its character from the other. The objection really goes to the suffi-

ciency of the declaration and should have been taken before trial by demurrer. It is too late now to urge it."

In Keegan v. Kinnare, 123 Ill., 280, it is said: "The rule is, where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict."

Repeating this rule in C. & A. R. R. Co. v. Clausen, 173 Ill., 100, the Supreme Court adds: "The intendment in such case arises from the joint effect of the verdict and the issue upon which it was given, and if the declaration contains terms sufficiently general to comprehend by fair and reasonable intendment any matter necessary to be proved, and without proof of which the jury could not have given the verdict, the want of an express statement of it in the declaration is cured by the verdict."

In B. & O. S. W. Ry. Co. v. Keck, 185 Ill., 400, the court says: "It is said the instruction directed to the first count should have been given, because that count fails to allege in what respect defendant was negligent. * * * Moreover, the defects in these counts" (the first among others) "although they might have been fatal on demurrer, are under the proofs cured by the verdict. Defects and omissions in pleadings in substance or form, which would have been available on demurrer, are cured by the verdict where the issues joined are such as necessarily require proof of the facts so defectively presented." In Hinchliff v. Rudnik, 70 Ill. App., 148, this court reversed and remanded a case because it was thought by it that to allege that the defendants "negligently allowed to be rolled into an excavation" "or improperly neglected to interpose proper barriers to prevent from rolling therein" a heavy iron pipe, to the injury of the plaintiff, was not to state with the certainty

necessary a cause of action, but when the cause finally reached the Supreme Court, 212. Ill., 569, 575, that court decided that the fault found with this declaration, namely, that "it failed to state with certainty a cause of action," and was "faulty because it was uncertain," was one which under the common law practice and the statutes of the State should be availed of by special demurrer, and was cured by verdict, and cited besides rules of pleading from Chitty, our statute of Amendments and Jeofails to justify the statement. That statute declares that no judgment upon a verdict shall be reversed for the want of any allegation or averment on account of which omission a special demurrer could have been maintained.

Finally, in Sargent Co. v. Baublis, 215 Ill., 428, decided within the past year, the Supreme Court applies the rules already stated to a situation not unlike the one at bar. The negligence alleged was that the defendant negligently permitted a grind-stone to be and remain in a defective and dangerous condition, but there was no statement of what defect existed in it or how or why it was dangerous. "The objection" says the court, "to the generality of the statement, without setting out the nature of the alleged defect, is one that should have been taken by demurrer, and the defect was cured by the verdict;" and again: "Several objections are made to the count, and it is apparent that if it had been demurred to the demurrer must have been sustained. But the rule is different when its sufficiency is questioned upon appeal or error. On demurrer a declaration is construed against the pleader, but after verdict all intendments and presumptions are in its favor. If a declaration contains terms sufficiently general to include by fair and reasonable intendment any matter necessary to be proved, and without proof of which the jury could not have given the verdict, the want of an express averment of such matter is cured by the verdict."

In the case at bar the jury expressly found from the evidence that the derrick fell by reason of being improperly constructed and being insufficiently anchored or guyed.

These seem to us matters by fair and reasonable intendment included within the general charge of the declaration, that by reason of the carelessness and negligence of the defendant a derrick in its possession, and used and operated by it, fell down upon the plaintiff who was in the necessary discharge of his duties as an employe of the defendant to do certain work for it near to said derrick, and also matters necessary to be proved and without proof of which the jury could not have given the verdict, and therefore we think that the want of their express averment in the declaration "is cured by the verdict."

We do not think the cases cited and insisted on by the appellant overcome the authorities which we have quoted or show that the doctrine announced in them is inapplicable to the present case. We have examined them all carefully. To discuss them is needless. Some lack the very important element of the allegation of the employment of the plaintiff by the defendant and the inference of duty therefrom; in others, it is dictum rather than decision that bears on the present issue, and of some it may be said that they seem to be inconsistent with later and consequently more authoritative decisions. Nor are we inclined to think, in view of all the cases, that the Supreme Court intended by any language in the Heerey case or elsewhere, to require upon the matter of the assumption of risk, or upon that of contributory negligence, any more detailed allegations in the plaintiff's declaration, than the customary one of due care and caution.

We hold, therefore, that the "2nd additional count of the declaration," on which the case went to the jury, was sufficient to sustain the verdict and judgment, and that the court committed no error in denying the motion in arrest and no error in refusing at the close of the evidence to take the case from the jury on this ground of a defective declaration.

The view we take of the declaration which was allowed by the trial court to go to the jury, renders unessential for our decision of the case the cross-error assigned by the appellee. We are, however, willing to say that we think it well assigned. Even if the original count was faulty in not

containing an allegation that the defendant's "servants con-structing and operating the derrick" were not fellow serv-ants of the plaintiff, the reasoning in Mott v. Chicago & M. E. L. Ry. Co., 102 Ill. App., 412, that such an omission makes the declaration rather a defective statement of a cause of action, than a statement of a defective cause of action, still seems to us valid. If it does, then despite the language in the Shields case, 134 Ill., 209 (not necessary to the decision of that case, because the case actually turned upon a defective instruction), concerning the want of cure by verdict of such a defect, it would seem unjustifiable to hold that the defect could be reached by an instruction, after the evidence was closed, to find the defendant not guilty on this count. But it is not worth while to discuss this phase of the matter, for we think that the declaration can be and (as it was not demurred to, but answered by plea) should be so construed as to eliminate this question. After stating that the plaintiff was employed by the defendant, and that in the usual and ordinary course of his occupation and by the direction of defendant's *foreman* in charge of said work, the plaintiff was in the act of winding a cable upon a windlass attached to a derrick used by defendant, the decla-ration proceeds: "That defendant carelessly and negli-gently disregarding its duty in that behalf, provided plain-tiff with an unsafe and insecure place in and around which to work, and that in consequence of its said negligence *and carelessness by and through its servants in constructing and operating the said derrick,* and while plaintiff was at work as aforesaid and was in the exercise of ordinary care and caution for his own safety, the said derrick fell down upon and against plaintiff," etc. If the italicized words are parenthesized, as they may very well be, the allegation is that defendant negligently provided plaintiff "with an unsafe and insecure place in which to work, and that in consequence of its said negligence (and carelessness by and through its serv-ants in constructing and operating the said derrick), and while plaintiff was at work as aforesaid, and was in the exer-cise of ordinary care and caution for his own safety, the

said derrick fell down upon and against said plaintiff," etc. This makes everything but the allegation of disregard by the defendant of a law-imposed duty in negligently failing to provide plaintiff with a safe place to work, by means of which failure the derrick fell on him, surplusage, and the action of fellow servants is eliminated. It is objected that this leaves no causal connection between the failure to provide a safe place to work and the accident. The place, however, was by the proof shown to be unsafe, *because* the derrick was not sufficiently fastened, and so the jury found, and this want of sufficient fastening seems to us in relation to this count (as we said in discussing the second additional count we found it in relation to that one), a matter by fair and reasonable intendment within the general language of the declaration concerning the negligence of the defendant, and a matter necessary to be proved in order to secure the verdict. We think, therefore, that the jury should have been allowed to return their own verdict under this original count, as well as under the second additional count of the declaration. A cross-error having been assigned on the instruction which instructed the jury to find the defendant not guilty on this count, it is available to the plaintiff, and he may properly urge that since we find this cross-error well assigned, the alleged error in refusing to sustain the objections to the second additional count is in any event immaterial. Pearson et al. v. Zehr, 125 Ill., 573, 576.

But it is further urged that refused instruction 41 should have been given, because even assuming that the declaration was sufficient to go to the jury, the proof offered under it plainly showed, under the law as laid down by the Supreme Court, an assumption of the risk of this accident by the plaintiff. The appellee maintains that the question of the assumption of risk by an employe is a question of fact for the jury, under proper instructions, and not of law for the court, and cites many cases where this doctrine is announced. The appellant rejoins that where there is no conflict in the evidence, the question ceases to be one of fact for the jury and becomes one of law for the court. This statement needs

limitation. To bring about this result, the evidence must not only be harmonious in showing the facts, but those facts must be so conclusive in their bearing on the question that all reasonable men would reach the same conclusion therefrom. Whether this is so is a matter of law for the court to determine, and on the determination of it in the affirmative, the question whether the plaintiff did not assume the risk becomes one for the court. The rule to be gathered from a consideration and analysis of the Illinois cases on the subject fully stated seems to be this:

If, conceding to be true all that the evidence tends to prove in favor of the plaintiff, it would be apparent to all reasonable minds that such dangers as the evidence thus tends to prove, were incidental to and connected with his employment, that they were not concealed or latent, but patent and obvious, that they were not extraordinary and unusual, but usual and incident to the business engaged in as conducted by the defendant, and existed continuously during the plaintiff's employment, and if there is no evidence tending to show that plaintiff ever complained of them or that the defendant had promised to remedy them, or that plaintiff had been ordered to incur them by some particular and especial order at the time of the accident, but on the contrary it is proven that he was then engaged in the regular line of his duties and usual employment, and that he was of mature age and of ordinary strength and intelligence, then the question of whether he understood and appreciated the danger (such understanding and appreciation being recognized by the Supreme Court as essential elements in the assumption of risk) is answered by a conclusive presumption, and the assumption of risk by the plaintiff becomes a matter for the court to assert as a matter of law, not a question of fact to be left to the jury.

Such a case the defendant claims is made in the present controversy. We cannot agree with him. We do not propose to discuss in any detail the evidence which although wholly for the plaintiff is voluminous. The vice of the defendant's reasoning upon it is that it assumes that the fail-

ure to have the obvious precaution of guy ropes for the derrick is the only defect or danger of which the plaintiff complains or can complain. But this is not the fact. The jury found from the evidence, and we think rightly, that the derrick fell by reason of being insufficiently anchored *or guyed*. Either anchoring more securely in some other way, or tension by guy ropes, would have equally prevented the accident. The absence of guy ropes was of course obvious to the plaintiff, but the absence of sufficient anchoring by the weight piled on and around the legs of the derrick, was not obvious to him. The argument that it was, is almost a reduction to an absurdity, for it would seem that no man in his senses would have taken a risk so sure to eventuate in disaster as the working on an appliance of this kind believing it to be insecurely fastened to its place. The plaintiff, who had been at work around this particular appliance but a very little while, and had been on the general job but a very few days, was not under an obligation to inspect carefully the machinery and surroundings furnished him by the master, and it would certainly be carrying the doctrine of assumed risk to an extreme to hold that an employe must know the weight of ballast on the sills necessary to hold a derrick down, and compare it by inspection with the weight actually there, or else take the chances of the appliance upon which, as in this case, he is specifically ordered to work, being safe in construction and anchorage. The defendant cannot even say that it too was ignorant of the defect and of the danger. Knowledge might be imputed to it in any event, for it was its business to furnish safe appliances and machinery, but in this case the evidence tended to show that the derrick having been constructed by carpenters who were not fellow servants of Sanborn, was according to the orders of a foreman to be anchored by piling iron on the sills and around a stiff leg until a certain mark was reached; that before that mark was reached the superintendent of the work called off the men piling the iron and told them there was enough there; that it proved not to be enough, and that the derrick tilted, and was evidently seen to be dangerous by those who

saw it tilt, of whom, however, the plaintiff was not one; that this was reported by one 'Carmody, a temporary foreman, to the superintendent, who neglected the warning and said the derrick was all right, which caused Carmody and his gang of men to refuse to work around the derrick longer; that thereafter and on the day before the accident, another employe, a very experienced workman, again warned the superintendent of the danger in the use of the derrick, and the warning was again neglected.

We think that there was evidence tending to prove all the four propositions of fact which the court told the jury in instruction No. 2 (given at the request of the defendant) it was necessary for the plaintiff to establish by a preponderance of the evidence to entitle him to recover. It was not error, therefore, to decline to take the case from the jury on the ground that the plaintiff must be held to have assumed the risk, on the ground of contributory negligence, or on the ground that the injury was the result of the negligence of fellow servants of the plaintiff. These were in this case questions for the jury under proper instructions. A great number of such instructions were given at the request of the defendant, stating the law fully and favorably for it, with repetition and reiteration.

What we have said expresses also our opinion as to the weight of the evidence. The jury by its general and special verdicts, under the instructions, showed that they found that the accident by which the plaintiff was injured was the result of defendant's negligence, that no negligence of the plaintiff materially contributed thereto, that the plaintiff did not assume the risk of the danger which he incurred, and that the accident was not the fault of the plaintiff's fellow servants. The court did not err in refusing on the motion for a new trial to disturb the verdict. The evidence supported it.

Nor do we think that these findings of the jury were made or modified because of any error in the conduct of the trial, either in the admission of evidence or in the matter of instructions to the jury. The evidence complained of was

that of the orders of Mr. Misho, the superintendent, to cease piling iron on the sills of the derrick near the rear stiff leg before it had reached the mark set by Benson. The evidence was competent and material. There is a presumption arising from it that no more weight was placed thereon, and no material change made until the accident. It was for the defendant to prove the contrary if so advised. The evidence of Sanborn alluded to in the argument did not do so.

It is sufficient to say of the refused instructions 39 and 40, that so far as they stated correct principles of law they were plainly covered by the series of very full instructions on the subject which were given, and that they were besides, in our opinion, subject to objection for other reasons. There was no error in modifying the first specific interrogatory offered by the defendant to be submitted to the jury. It would have been misleading as drafted, and its purpose, so far as it was legitimate, was effected by the submission of the three interrogatories which were given to the jury. The second refused interrogatory was not decisive of the case nor concerning an ultimate fact. It was concerning an evidentiary fact only, and was properly rejected. Its rejection indeed although assigned as error, is not in argument insisted on as erroneous.

We think substantial justice has been done. Employers are not insurers of their workmen's safety, but they are under general obligations to give them a safe place to work and reasonably safe appliances to work with. It was the verdict of the jury that in this case these obligations were not fulfilled.

The judgment of the Superior Court is affirmed.

*Affirmed.*