## THE SPRINGFIELD BOILER AND MANUFACTURING CO.

### *v.*

### ROSCOE E. PARKS.

*Opinion filed October 23, 1906.*

1. MASTER AND SERVANT—*the question of assumed risk does not arise in obeying master's command.* The question of assumed risk does not arise where a servant performs dangerous work in obedience to the master's command, the question in such case being one of contributory negligence, depending upon whether the danger was so great that a person of ordinary prudence would not have incurred it.

2. SAME—*degree of danger in obeying master's command is for the jury.* Whether the execution of an order of the master was attended with such danger that a person of ordinary prudence having the knowledge of the situation possessed by the servant would or would not have incurred the danger is a question of fact for the jury.

3. INSTRUCTIONS—*when instruction authorizing recovery upon proof of allegations of count is not erroneous.* An instruction, in an action by a servant for personal injury, authorizing a recovery if the plaintiff has proved his case as stated in a certain count of the declaration is not erroneous, as ignoring the defense of assumed risk, where the count referred to contains averments which, if true, negative the assumption of risk by the plaintiff.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. J. A. CREIGHTON, Judge, presiding.

This was an action on the case commenced by the appellee, by his next friend, in the circuit court of Sangamon county, against the appellant, to recover damages for an injury to his person alleged to have been sustained by him while in the employ of the appellant. The case was submitted to the jury upon a declaration containing one count, which averred the appellee was inexperienced in the particular work in which he was engaged; that the foreman of appellant had knowledge of such inexperience and or-

dered appellee to use a certain swing-board in descending a stack for the purpose of doing certain work therein, and assured appellee he would incur no danger in using said swing-board; that appellee, relying on such assurance of safety, used the said swing-board, and while descending thereon into said stack he fell from said swing-board and was injured, etc. The general issue was filed, and a trial resulted in a verdict and judgment in favor of the appellee for the sum of $2500, which has been affirmed, on appeal, by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

The appellant was engaged in constructing two stacks for the Springfield Electric Light and Power Company at the plant of said company in the city of Springfield. The appellee was employed by appellant as a workman upon said stacks. When he commenced work thereon, two brick stacks thirty-five feet high, which extended to within ten feet of the roof of the power house, had been completed. On these brick stacks appellant constructed metal stacks thirty-five feet high, and which, when completed, extended twenty-five feet above the roof. The metal portions of said stacks were constructed by riveting together sheets of iron in courses five feet in width. While at work on the inside of the stacks the workmen stood upon scaffolding which was constructed as the work progressed, and the workmen on the outside of the stacks were supported either in a swinging cage or upon a swing-board, which was attached by hooks to the top of the rims of the stacks. The swing-board consisted of a board an inch and a quarter thick, sixteen to eighteen inches wide and two feet long, with cleats on the bottom to prevent its splitting. In each corner of this board, about an inch from the ends and sides, were bored an inch-and-a-quarter hole, and through these holes, on each end of said board, a three-fourths-inch rope ten feet long was passed, the ends of which were firmly tied beneath the board. Said ropes also passed freely through rings of the size of

the holes in said board, which were fastened to iron hooks, and when the swing-board was in use the hooks passed over the top of the rim of the stack and the operator sat upon the board between the ropes, with his face toward the stack and his feet suspended downward below the board, his knees being between the edge of the board and the side of the stack. The swing-board was raised and lowered by its hooks being attached to a rope which passed through a pulley in the end of an arm which was fastened to a gin-pole, which was placed upon the scaffold in the north stack. The appellee was nineteen years of age at the time he was injured, and had been in the employ of the appellant about four months, and had worked in the appellant's shops as a laborer and boiler-maker's helper until he commenced work upon the stacks at the plant of the electric light and power company. Just before going to work upon said stacks the appellant was about to lay off a number of its workmen, including appellee, but retained the appellee and put him to work upon said stacks upon his statement to its superintendent that he wanted work; that he had assisted in building scaffoldings, was in the habit of going up high, and that he thought he could do the work upon said stacks satisfactorily. The appellee worked mostly upon the outside of the stacks, his duties being to insert the rivets through the holes in the sheets of iron from that side and to hold a hammer against the same while they were bradded by a workman upon the inside of the stacks. The appellee, while at work, usually occupied the cage but upon two or more occasions used the swing-board, and on different occasions, in ascending or descending the outside of the stacks, was drawn up in the swing-board. On the day of the injury the stacks were completed by appellee and a fellow-workman named Foster, by riveting thereon the crowns and fastening the stacks together by placing thereon angle-irons. When completed the scaffold remained in the north stack but the one in the south stack had been removed. When appellee and Foster

had completed the work at the top of the stacks, Charles Gue, the foreman in charge of the work, directed the appellee to go down into the south stack and to remove some plates at the bottom of that stack. Appellee testified that Gue then said to him: "You go down; you are already there on the stack; you go down and take those plates out;" that he replied he did not want to go down on the swing-board; that Gue wanted to know what was the matter, and he replied he did not like the way the ropes were fixed; did not like the way they ran through those rings; did not think that they were safe; that Gue then said: "Go on; there is no danger; it will be all right when you get some weight on it," whereupon appellee tied the pulley rope into the hooks of the swing-board and got onto the swing-board with a hammer in his right hand, his feet toward the center of the stack and his left side and back toward the north side of the stack, and grasped the ropes with both hands, and while he was being lowered by Gue and another man who stood upon the roof, a corner of the swing-board caught upon a projecting rivet and tipped up, which caused appellee to slip off his seat. He held on with his hands and called for help, but before help came he became exhausted and fell to the bottom of the stack and was severely injured.

PATTON & PATTON, for appellant.

STEVENS & STEVENS, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellant, at the close of all the evidence, asked the court to instruct the jury to return a verdict in its favor, which the court declined to do, and the action of the court in that regard has been assigned as error and is mainly relied upon in this court as a ground of reversal.

The first ground urged as a reason why such instruction should have been given is, that the appellee assumed the risk of being injured from the use of said swing-board while at

work upon said stacks, and as he was injured while using said swing-board there could be no recovery. It is the settled law of this State that where a servant engages to perform service for another he does so in view of the risks incident to his employment, and that he will be presumed to have contracted with reference to such risks and to have assumed the same, and if he receive an injury resulting from the incidental risks and hazards ordinarily connected with such employment he cannot hold the master responsible. This general rule has, however, like most general rules, its exceptions, one of which is, that when the servant is directed by the master, or one who stands to the servant in the place of the master, to encounter a danger, and the servant, by reason of such direction, does encounter the danger and is injured, the master cannot escape liability unless the danger which the servant is directed to encounter is so apparent that an ordinarily prudent person would not have encountered it, in which event the master escapes liability on the ground of contributory negligence on the part of the servant, rather than that of assumed risk. (*Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447; *Offutt* v. *World's Columbian Exposition*, 175 id. 472; *Graver Tank Works* v. *O'Donnell*, 191 id. 236; *Illinois Steel Co.* v. *McFadden*, 196 id. 344; *Illinois Central Railroad Co.* v. *Atwell*, 198 id. 200; *Illinois Central Railroad Co.* v. *Sporleder*, 199 id. 184; *Chicago and Eastern Illinois Railroad Co.* v. *Heercy*, 203 id. 492.) The appellee testified that when he and his fellow-workmen had completed the stacks appellant's foreman directed him to go down into the south stack and remove certain plates from the bottom of that stack; that he stated to the foreman he did not want to go down upon the swing-board as he did not think it was safe, but that the foreman said to him, "Go on; there is no danger; it will be all right when you get some weight on it," and that thereupon he attached the hooks of the swing-board and started to descend into the stack, when the end of the board caught

upon a rivet and the board tipped and he fell to the bottom of the stack. While this statement of appellee was contradicted by the foreman, the jury, the circuit court and the Appellate Court have found upon that proposition in favor of the appellee, and their findings are binding upon this court. It is therefore clear the appellee was acting under the direction of the foreman of the appellant at the time he was injured. In *Illinois Steel Co.* v. *Schymanowski, supra,* on page 456, it is said: "Where a corporation authorizes one of its employees to have the control over a particular class of workmen in any branch of its business, such employee is, *quoad hoc,* the direct representative of the company. The commands which he gives within the scope of his authority are the commands of the company itself, and if such commands are not unreasonable, those under his charge are bound to obey at the peril of losing their situations, hence the company will be held responsible for the consequences." And in *Offutt* v. *World's Columbian Exposition, supra,* on page 479: "The rule is, that where the servant is injured while obeying the orders of his master to perform work in a dangerous manner the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it." And the question whether the execution of the order of the foreman was attended with such danger that a man of ordinary prudence, having the knowledge of the situation which appellee had, would have incurred the danger by going upon the swing-board, was one of fact for the jury. (*Pittsburg Bridge Co.* v. *Walker,* 170 Ill. 550; *Offutt* v. *World's Columbian Exposition, supra; Graver Tank Works* v. *O'Donnell, supra.*) We think, in view of the testimony of appellee and the authorities hereinbefore referred to, that the appellant cannot invoke the doctrine of assumed risk in this case to relieve itself from liability.

It is next contended the instruction should have been given on the ground that a right of recovery was defeated by

reason of the contributory negligence of appellee. While it is true appellee sat upon the swing-board facing the center of the stack as he started to descend instead of with his knees against the wall of the stack, as was the customary method of sitting upon the swing-board, the arm attached to the gin-pole in the north stack, to which the pulley rope which controlled the movement of the swing-board was fastened, was not of sufficient length to permit the swing-board to swing freely in the south stack, and appellee testified he sat upon the swing-board in the manner in which he did, so, as he thought, he could more easily avoid contact with the side of the stack as the swing-board descended into the stack, and while the appellee had been inside of the stacks, it does not appear from the evidence that he had, prior to the time he fell, used the swing-board for ascending and descending the inside of the stacks. It also appears that the stacks were riveted on the inside, which would cause the inside of the stacks to present a more uneven surface and afford greater obstruction to the free ascent and descent of the swing-board than the outside of the stacks, where the heads of the rivets alone were exposed, and by reason of the concave surface of the inside of the stacks the corners of the swing-board would be more likely to come in contact with the surface of the stacks as it moved up and down and cause the board to tip than they would with the outside of the stacks. Negligence and contributory negligence are questions of fact, and unless the facts are uncontroverted and all reasonable minds would readily agree as to the conclusion to be drawn from the admitted facts, those questions are questions to be submitted to the jury as questions of fact, and not to be decided as questions of law by the court. In view of all the facts proven in this case we think the question whether the appellee was guilty of such contributory negligence as should defeat his right to recover was properly submitted to the jury as a question of fact.

It is also urged the evidence does not show the appellant to have been guilty of the negligence charged against it in the declaration upon which the case was submitted to the jury.   It must be conceded the swing-board from which the appellee fell was a very simple device, the use of which might readily be understood by the ordinary man.   The case was not submitted to the jury, however, upon the theory the swing-board was defective or of complicated mechanism, but upon the theory the appellee was inexperienced in its use; that the foreman of appellant·was aware of that fact, but nevertheless ordered the appellee to descend into the stack thereon with the assurance that the swing-board was a safe appliance to be used for that purpose.   It is evident it would require more or less experience in the use of a swing-board to enable a workman in safety to descend thereon into a stack seventy feet high, and whether the appellee was possessed of such experience in the use of the swing-board at the time he was ordered by the foreman of the appellant to go thereon to the bottom of the stack was clearly a question of fact and not of law.   On this branch of the case it is, however, urged the evidence fails to show that Gue, the foreman of appellant, had knowledge, as was averred in the declaration, that the appellee was lacking in experience in the use of the swing-board at the time he ordered the appellee to descend into said stack.   At the time appellee went to work, a foreman by the name of Cook was in charge of the work upon said stacks.   After the work thereon had progressed for a number of days Cook was superseded by Gue, appellant's regular stackman.   Appellee testified when Gue took charge of the work he inquired of him if he had ever worked upon stacks before, and that appellee informed him he had not.   That evidence fairly tended, we think, to support the averment of the declaration that Gue knew the appellee was wanting in experience in the use of the swing-board in the construction of stacks at the time he ordered the appellee to descend into the stack upon the swing-board.

We are of the opinion the court did not err in declining to peremptorily instruct the jury to find for the appellant, but that the court properly submitted the case to the jury.

It is further contended that the court improperly gave to the jury the first, second and third instructions offered on behalf of the appellee. The criticism made upon the first and second instructions is, that they ignore the defense of assumed risk interposed by the appellant. Those instructions informed the jury that the appellee might recover if he had proven his case as stated in the second count of his declaration (that count being the count upon which the case was submitted to the jury) by a preponderance of the evidence. The declaration in this case differs from the declaration in *Illinois Terra Cotta Lumber Co.* v. *Hanley*, 214 Ill. 243, and kindred cases relied upon by the appellant. Here facts were averred in the second count of the declaration which, if true, showed the appellee did not assume the risk which caused his injury, while such was not true of the declaration in the *Hanley case*. The third instruction is similar to the seventh instruction given on behalf of appellant, and the criticism made on that instruction is without force.

It is finally urged that the attorney for the appellee, in his closing argument to the jury, traveled outside the record, and that the case should be reversed by reason of the misconduct of such attorney. The attorney for the appellee, in his closing argument, undertook to discuss certain evidence which had been introduced under the first count of the declaration, which count was withdrawn before the argument to the jury was begun. Upon objection being interposed to that line of argument by the attorney for the appellant the court promptly sustained the objection, and directed the attorney for the appellee to confine his argument to the evidence which tended to support the issues presented by the second count of the declaration. While the conduct of the attorney for the appellee in attempting to

discuss issues not then before the jury was reprehensible, such misconduct was promptly rebuked by the trial court, and the jury were informed by that court that no recovery could be had under the first count of the declaration. We do not think the case should be reversed on account of the action of the attorney for the appellee during his closing argument.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*