## John F. Devine, Administrator, Appellee, v. Mathis Brothers Company, Appellant.

### Gen. No. 15,510.

1. MASTER AND SERVANT—*effect of order of master.* "When the servant is directed by the master, or one who stands to the servant in the place of the master, to encounter a danger, and the servant, by reason of such directions, does encounter the danger and is injured, the master cannot escape liability unless the danger which the servant is directed to encounter is so apparent that an ordinarily prudent person would not have encountered it, in which event the master escapes liability on the ground of contributory negligence on the part of the servant, rather than that of assumed risk."

2. CONTRIBUTORY NEGLIGENCE—*when servant not guilty of.* The verdict of the jury upon the question of contributory negligence will not be disturbed where it appears that they were justified in finding from the facts and circumstances that the deceased as an ordinarily prudent man, under the circumstances, did not know or appreciate or in the exercise of ordinary care would not know or appreciate that the instrumentality which resulted in his death was of such a character as might result in his injury.

3. EVIDENCE—*when expert testimony competent.* Evidence as to a proposition in physics, *held,* competent in determining questions of negligence involved where the accident resulted from an excessive strain applied to a plank.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed March 16, 1911. *Certiorari* denied by Supreme Court (making opinion final).

FRANK M. COX and R. J. FELLINGHAM, for appellant.

JAMES C. McSHANE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The decedent, Arthur J. Immekus, was employed by the appellant in the installation of a heating system in

the plant of the Pullman Company at Pullman, Illinois. The building in question was a one story car shop about a block long and about two hundred feet wide. Skylights about twelve feet wide and six or seven feet above the roof extended nearly across the building. A ventilator house about fifteen feet square was located on the roof at the south end of one of the skylights. A door opened from the south side of the ventilator house onto the roof. A window was in the north side of the ventilator house opening into the area under the skylight. On the day of the accident the appellant with a foreman and five workmen were installing heaters in the ventilator house. A heater consisted of five sections of radiator coils. Each section was seven feet high, six and one-half feet long, eight inches wide and weighed about eight hundred pounds. In placing in position the south heater, consisting of five sections fastened together, it was necessary to raise it to put a roller under it so they could move it. The foreman, Larson, told the men on the morning of the day of the accident to go and get a couple of planks. Four of the men, including decedent, went onto the roof and got two planks. Some said the planks were the best and strongest of four or five planks to select from, and one witness for the defendant said there were only the two planks. The planks were two inches thick, ten inches wide and one about twelve feet long and the other about ten and one-half feet long. The workmen then used the said planks to pry up the south heater, and with them and two iron bars the south heater was raised and put on a roller and put into position. In this work the decedent used both planks as prys, sometimes alone and sometimes with a fellow workman on the plank with him, but the planks then extended through the door and over the flat roof, where there was no danger. After placing the south heater in position the foreman told the men, including decedent, to take the planks and put them

under the north side. The north heater then had only three sections fastened together—the other two being detached. The heater was about eighteen or twenty inches from the wall, and in order to use the planks as prys it was necessary to take the window out and put the planks through the window, and one witness said the foreman ordered them to stick the planks out of the window. The plank in question was put under the heater about four inches and then rested on a two by four on the window sill for a fulcrum, extending at an angle through the window about ten feet into the area of the skylight twenty-five feet above the floor. The foreman then ordered the three men out onto the planks. The decedent and Zoubeck went out onto the said plank and Olson went out on the shorter one and with the other two workmen, using iron bars, attempted to pry up the north heater. Zoubeck stood with his right foot on a beam five inches wide and six inches to a foot east and parallel with the plank, with his left knee raised about two feet or more pressing down near the end of the plank and at the same time holding onto a six by six inch timber east of and adjacent to the said horizontal beam and extending up diagonally toward the north. The decedent was sitting on the plank about a foot and a half north of Zoubeck facing west. After about twenty minutes, at about four o'clock in the afternoon, the plank broke at about the window sill and decedent fell with the plank, struck on his head at the temple on a hand car and died immediately.

The appellant contends that the decedent assumed the risk. We think that the greater weight of the testimony shows that the foreman ordered the decedent and others to take the two planks, up to that time used in a safe place, put them under the north heater out through the window into the area under the skylight, and also ordered decedent and Zoubeck to go out onto the longer plank. In Springfield Boiler Co. v. Parks,

222 Ill. 355, the court said, p. 359: "When the servant is directed by the master, or one who stands to the servant in the place of the master, to encounter a danger, and the servant, by reason of such direction, does encounter the danger and is injured, the master cannot escape liability unless the danger which the servant is directed to encounter is so apparent that an ordinarily prudent person would not have encountered it, in which event the master escapes liability on the ground of contributory negligence on the part of the servant, rather than that of assumed risk." Citing many cases. It follows that the decedent in obeying the order of the foreman did not assume the risk.

Was, then, the decedent guilty of contributory negligence? The counsel for appellant insists very earnestly and ably that he was. It is urged that decedent did not exercise ordinary care because he did not hold onto an iron rod just above him nor hold onto the diagonal timber Zoubeck held onto, nor stand upon a plank laid on the two horizontal beams and reaching across the space beneath him. There is testimony tending to show that the iron rod was above his reach; also that the decedent had to extend his body full length and bend over horizontally toward Zoubeck to reach the said six by six inch diagonal timber; also that deceased had attempted to and did hold onto said timber for about five minutes and complained that it was a tiresome job. There was also testimony tending to show that the plank mentioned for him to stand on was not there the day of the accident, but was placed there the next day. After a careful consideration of all the testimony and examination of the photographs in evidence, showing the location of the iron rod, beams, timbers, etc., we are not disposed to say that the decedent was guilty of contributory negligence in these respects.

It seems clear to us that the manner of raising the north heater by extending planks through the window

into the area beneath the skylight twenty-five feet above the floor and ordering men out onto them to use as prys was dangerous. However, was it so dangerous that an ordinarily prudent man would not have encountered it? The decedent was twenty-one years of age. He had worked in different stores and had been employed twice by appellant for several weeks each time. The day of the accident was the third day he had worked on the job in question. He spoke to Zoubeck about the danger of falling, cautioned Zoubeck and said that to fall would be sure death. He undoubtedly knew and appreciated the danger of falling off the plank and that he was working in a dangerous place, and must have known the danger if the plank should break. There was no patent defect in the plank; it was a clean, fresh break, and in the ordinary use of the plank it may be that the decedent would be held to have had equal means of knowledge with the appellant of its adaptability for such ordinary use; but to be used as a pry on the order of the foreman in such a dangerous place we do not consider an ordinary use, or at least it was a question of fact for the jury.

As we understand the law, it was appellant's duty to exercise reasonable care to see that the plank used as a pry in a dangerous place was reasonably safe for the specific use to which it was put by order of appellant; and the decedent, in the absence of notice, had the right to rely upon the performance of such duty by appellant's foreman before he gave the order to use said plank in said dangerous manner and place. We think that from all the facts and circumstances the jury might properly find that the decedent, as an ordinarily prudent man, under the circumstances, did not know or appreciate, or in the exercise of ordinary care would not know or appreciate, that the plank so used as a pry was not of sufficient strength to bear the strain put upon it, and that the appellant knew, or in the

exercise of ordinary care in a situation of such danger should have known, of the latent defect, in that it had not sufficient strength to bear the strain put upon it as a pry by order of the foreman.

Labatt on Master and Servant, vol. 1, sec. 141, in writing of the duty of the master, says: "So also he must take into account the properties of such substances as he employs for the purposes of his business, and the operation of familiar physical laws upon these substances." He then says that the master is chargeable with knowledge of the following facts: "That certain materials will not support more than a certain weight; that ropes and cables will break if subjected to a certain tensional strain; that a certain kind of a timber is not suitable for use in the manufacture of some particular tool." Citing cases.

In speaking of the duty of the master to the servant in the Jenney Electric Light Co. v. Murphy, 115 Ind. 566, the court said, p. 569: "What he especially engages is, that he will not expose the employe to danger which is not obvious, or of which the latter has no knowledge or adequate comprehension, and which is not reasonably and fairly incident to and within the ordinary risks of the service which he has undertaken." We conclude that the jury might properly find from the evidence that the danger of obeying the order of appellant was not so imminent that an ordinarily prudent man would refuse to incur it.

Testimony of a witness, for thirty years an architect and engineer, was introduced by the appellee, over the objection of the appellant, that the bearing down weight on the fulcrum, including 127 pounds, the weight of the decedent, and 145 pounds, the weight of Zoubeck, was 3,971 pounds, and appellant urges the same was error. We see no objection to this testimony. A knowledge of a law of physics is often proper and necessary in determining what inferences should be drawn from an existing state of things. Hicks v. Silliman et al., 93 Ill. 255.

The appellant complains that the court improperly modified five of its instructions, and erred in refusing seventeen others. The court gave twenty-nine instructions offered by the appellant and five in behalf of the appellee. We think the appellant has no just ground for complaint. The jury were fully, fairly and, in many respects, repeatedly instructed on every proper theory submitted in behalf of the appellant.

There was a judgment for appellee for $5,000, and appellant insists this is excessive. It is certainly a large amount for the pecuniary damages under the evidence in this case, but the pecuniary value of life is so uncertain and problematical, so serious and difficult a question, that we cannot hold said sum to be excessive, although we agree that the same is a large sum for damages under the evidence.

The judgment will be affirmed.

*Affirmed.*