## Diamond Glue Company v. Albert Kozlowski Wietzychowski.

### Gen. No. 12,249.

1. ADMISSION OF EVIDENCE—*when cannot be complained of.* Where an entire line of testimony is stricken out but subsequently such ruling is changed, the court, stating that in his opinion certain portions of such testimony were competent, the party so having moved to strike out has nothing of which he can complain if any of such testimony is competent where he does not make specific motions to strike out the incompetent portions of such testimony.

2. MEMORANDUM—*when witness may testify from.* A witness may testify from a memorandum made by him at the time of the occurrence to which he is testifying where he states that at the time he made such memorandum he knew it to be correct, notwithstanding he does not testify as to the occurrence in question from an independent recollection.

3. RES IPSA LOQUITUR—*when servant can recover.* Without reference to the technical doctrine of *res ispa loquitur*, a servant injured while operating an elevator of his master can recover where it appears that such servant was a stranger to the operation of such elevator and it was under the management of the master and the accident was such that in the ordinary course of things it would not have happened if such master had used proper care.

4. DECLARATION—*when sufficient after verdict.* A declaration is sufficient after verdict which by intelligible allegations has apprised the opposing party of the cause to be made against him.

5. PAIN—*what evidence competent to show.* The testimony of a medical expert that a particular injury would cause pain in the future is competent.

6. MEDICAL EXAMINATION—*when Appellate Court will not consider.* The Appellate Court in passing upon the question of the excessiveness of the verdict will not consider a medical examination which has been made after verdict and pending the decision upon the motion for a new trial.

Action on the case for personal injuries. Appeal, from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed March 15, 1906.

**Statement by the Court.** This is an appeal from a judgment for $2,500 and costs against the appellant, the defendant in the Circuit Court, in favor of the appellee, the plaintiff there. The judgment was on the verdict of a jury in a suit for personal injuries.

The declaration originally was in three counts, but a discontinuance was taken by the plaintiff as to the third count before the case went to the jury. The first count alleges, in substance, that the defendant on March 12, 1904, was operating a glue factory, in which it employed the plaintiff, and in which it operated mechanically, by steam or other power, an elevator for the conveyance of passengers and freight between the various floors; that it was the duty of the defendant to equip and maintain its elevator with good and reasonably safe cables, ropes, chains, appliances and machinery, so that the same would be reasonably safe; that the defendant disregarded its said duty and allowed them to become worn out and defective, so that while the plaintiff in the exercise of due care and caution was rightfully on the elevator a great distance above the ground, the said cables, chains, ropes, appliances or machinery with which the elevator was equipped, broke and the elevator fell to the ground, by means of which the plaintiff was thrown to the floor of the elevator and greatly injured.

The second count also describes the accident, and contains averments that the plaintiff was a common laborer in the factory; that as such common laborer he was not informed and had no knowledge of elevators nor the loading and operation thereof, nor of the dangers incident thereto, of all which the defendant had notice; that it was the duty of the defendant to inform the plaintiff of these dangers, but that it failed to do so; that on the contrary, the defendant's foreman ordered the plaintiff to run the elevator up and down without informing him of the dangerous char-

acter of the employment, by means whereof, while the plaintiff, in obedience to the commands of the foreman, was running the elevator up and down with all due care, the cable, rope or chain by means of which it was raised or lifted, parted, the elevator fell, and the plaintiff was injured.

The general issue was pleaded by the defendant. A motion for a new trial and a motion in arrest of judgment were denied by the court below before judgment. Upon the argument of said motion for a new trial the trial judge said that unless the plaintiff permitted an examination of his then physical condition by a physician to be selected by the court, the court would award a new trial; whereupon the plaintiff assented to such examination and the defendant agreed to pay the expense of such examination, and the court selected a physician, who made a written report of the result of the examination to the trial judge.

The appellant has in this court assigned as error alleged erroneous rulings of the trial court in the admission and exclusion of evidence, in refusing peremptorily to instruct the jury to find for the defendant at the close of all the evidence; in giving the instructions tendered by the plaintiff; in modifying one of the instructions tendered by the defendant; in not awarding a new trial, and in overruling the defendant's motion in arrest of judgment. The assignments of error also allege that the damages awarded by the jury are excessive; that the trial court improperly received and opened the sealed verdict of the jury in the absence of one of the jurors, and that defendant was improperly deprived of its right to have the jury polled at the time the verdict of said jury was opened and read. Some of these assignments have not been urged here. Those argued are considered in the opinion following.

CALHOUN, LYFORD & SHEEAN, for appellant; ROBERT J. SLATER, of counsel.

J. W. SUTTON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The plaintiff in this case, Wietzychowski, had been for several years in the employ of the defendant, The Diamond Glue Company, at the time of his injuries. During several hours each morning his work was running the freight elevator by the falling of which he was injured. He would take glue stock and material from the basement to the second and third floors in trucks run upon the elevator platform, and bring down whatever was needed below. After his work on the elevator stopped at 11 or 12 o'clock, "the boss" would tell him to do something else, and he would work with "the gang," generally in loading material on the trucks and taking it to the wash mill on the first floor to be washed.

The building at the place where the elevator ran consisted of three stories, and above this a working platform. The elevator consisted of an open wooden platform about six feet by nine, composed of a frame of two by eight timbers, upon which was laid a two inch floor sustained by upright iron side pieces operating in a slide in guide posts at the side of the shaft and being connected at the top by a cross-beam, the entire elevator being sustained by means of a seven-eighths inch wire cable fastened to this cross-beam. Attached to the cross-beam was a spring intended, in case the cable should break, to operate safety appliances called dogs at the bottom of the elevator. The cable extended to sheaves and gear work in the dome of the building over the working platform, then back to the drums on the second floor, which drums were operated by belts and pulleys. The elevator was also supplied with a cable to start and stop it, and was adjusted so that it stopped automatically on reaching either the top or the bottom floor. Glue stock or material to be taken from the first to the third floors was loaded into trucks somewhat smaller in dimension than the elevator platform and about four feet in depth, the trucks were then pushed on to the elevator by appellee and others and hoisted.

On the morning of March 12, 1904, the plaintiff had taken two truck loads of material from the first to the third floor, the first being somewhat smaller and the second about the same size as the third. The third was placed upon the ele-

vator, the plaintiff got upon the platform thereof to ride with the load, pulled the rope to start the elevator, and stood there until after passing the second floor, when the hoisting cable broke, the elevator fell to the first floor, the truck was broken, and part of it striking the plaintiff injured him.

Thus far there is no contention between the parties as to the facts. Those which relate to the alleged negligence of the defendant, bringing about the accident, and to the extent of plaintiff's injuries are in dispute.

The negligence claimed by the declaration is that the ropes, chains, cables and appliances of the elevator had been suffered to become worn out and defective; and that the foreman ordered the plaintiff to run the elevator, and although the plaintiff had no knowledge of the running of elevators, failed to warn him of the dangers incident thereto.

The evidence to support these claims is first and chiefly the undisputed fact that without warning and with no extraneous cause apparent, the elevator while in passage fell more than a story on account of the breaking of a hoisting rope or cable, which ought to have been, but was not, strong enough to hold it, and that the so-called "dogs" with which the elevator was supplied did not act. These "dogs" were automatic devices which if they are working properly are thrown out in case the cable breaks, and gripping the slides in the guide posts stop the elevator, or at least materially break the fall. It is vigorously argued by counsel for appellant that the breaking of the cable and the failure of the dogs to work, even though with no apparent cause extrinsic to their own condition, are no evidence of negligence on the part of their owner, because this is not a case for the application of the principle *"Res ipsa loquitur."* But without invoking that principle, evidence of the way in which the accident happened and the apparent absence of any efficient cause for the action or non-action of mechanical appliances involved in the accident, other than their defective condition, is proper for consideration in connection with such other evidence of their condition as is produced. Slack v. Harris, 200 Ill., 96–113.

While the mere fact that an employe has been injured is not sufficient to establish that an employer was guilty of negligence and *may* have no tendency to show that the injury was the result of negligence on the part of the employer, yet the manner of and circumstances under which an injury was received may furnish proof of such negligence. Spring Valley Coal Co. v. Buzis, 213 Ill., 341.

Besides the circumstances of the accident and the statement of plaintiff that the cable was at least five years old, there is in the record bearing on this question of defendant's negligence, in connection with the condition of the elevator appliances, the testimony of William C. Holway, an elevator inspector employed by the city, the testimony of Joseph Tomaszewski, a fellow employe of the plaintiff, and that of Joseph Leonard, an engineer in defendant's employment, of Charles Rabe, another employe, and of W. H. Morehead, the defendant's superintendent.

Holway's testimony as given was, that four days after the accident he saw the safety devices, the dogs, the spring and lever. He said, "They were all rusted and not in working order. * * * I could tell they were not in working order because they were so rusted out. * * * I could see they were out of order entirely. I was not absolutely sure whether they would have worked or not except from the way they looked to me. I told them that on account of the condition in that line of business—there was so much dampness and salt in the atmosphere—that they ought to take great care of their cables and paint all the iron work. Everything was so rusted about the elevator I ordered everything to be painted in the shape of iron around it except the cables, and they should be oiled."

Before so testifying, Holway, after stating that he was an elevator inspector of the city, said that "without referring to memoranda he had no independent recollection of the condition of the elevator, but that he had a memorandum that would refresh his memory about it." He produced and was allowed to read the memorandum, and after doing so swore that he then remembered the condition of the elevator, but

Glue Company v. Wietzychowski.

could not describe it exactly.    He then testified as before set forth.    On cross-examination he said that the memorandum from which he refreshed his memory was made by him and was in his handwriting, but had been in the custody of the Building Department in the City Hall.    The examination and the rulings of the court on the testimony then proceeded thus:

"Q. You say that aside from that memorandum you had no recollection whatever of anything that you saw at the plant of the Diamond Glue Company? A. Well, no; except as I said before, the surroundings, the dampness and all that and the rest that I saw.

Q. But you have no recollection whatever concerning the condition of the safety dogs or the cable or anything else until you looked at that paper? A. No, sir; I did not.

Q. Now, are you relying simply upon the fact that there was a certain statement made on the paper, or have you now an independent recollection of the facts that the cable and dogs were in a certain condition? A. I am relying entirely on this report of mine.

Q. You haven't any independent recollection after looking at that? A. No, sir.

Q. So that you can say that you have a mental picture? A. No, I cannot.

Q. Of what you did see on the day in question? A. I could not say that.

Q. You have no independent recollection, then, concerning it? A. No, sir; I have not.

Mr. SHEEAN: I move, then, if the court please, that this entire testimony be stricken out.

THE COURT: The motion is sustained.

And thereafter, upon argument and further consideration, the jury having been excused for the day, the court changed its ruling, and held as follows:

THE COURT: I overrule this motion, because in my opinion certain portions of the evidence should remain in.

(To which ruling of the court the defendant, by its counsel, then and there duly excepted.)

And subsequently, upon the argument to the jury, counsel for plaintiff, by permission of the court, was permitted to

state when he came to any point when he wanted to speak of Holway's testimony, that the ruling of the court excluding all of Holway's testimony was subsequently changed, because the court considered some parts of it were competent."

It is perhaps left in doubt by this record exactly what was before the jury. Counsel for appellant seem to argue that all the evidence of Holway was admitted by the last ruling of the court, and that this was erroneous, if any portion of it was incompetent.

Counsel for appellee, on the other hand, apparently takes the position that the court decided, in the absence of the jury, that a portion of Holway's evidence was competent, after having decided in their presence that it was incompetent and stricken it out, and that thereupon the court, because it was inconvenient to recall the witness, gave permission to the plaintiff's counsel to state to the jury *"by way of argument"* *that certain portions* of Holway's evidence might be considered by them with other evidence in the case, and that in the absence of any exception by the defendant to any portion of the argument of counsel for the plaintiff, and of any exception showing that any specific portion of Holway's testimony was presented to the jury, the presumption is that the jury knew nothing of the restoration of any part of the evidence and ignored it because stricken out by the court in their presence.

Neither of these theories seems tenable to us. The original motion, after the testimony had been admitted and the cross-examination on the memorandum had taken place, was "that this *entire* testimony be stricken out." This motion was sustained in the presence of the jury. Afterwards, on argument and further consideration in the absence of the jury, this ruling was reversed, and the court said: "I overrule *this* motion, because in my opinion *certain portions* of the evidence should remain in." If counsel for appellant then objected to certain portions of the evidence as incompetent even if the rest were competent, they should have then made motions directed respectively to those specific portions.

In the absence of said motions, we think that if any portion of the testimony was competent and should have stood, then there is nothing in the record through which appellant can avail himself of the non-exclusion of other portions, if there were any, which were incompetent.

On the other hand an exception was taken to the over-ruling of the motion to strike out the entire testimony, and the record expressly states that plaintiff's counsel was permitted to state "when he came to any point where he wanted to speak of Holway's testimony, that the ruling of the court excluding all of Holway's testimony was changed," and this consideration renders appellee's position, as before stated, untenable.     In our view, therefore, the whole of Holway's testimony must be considered before the jury, and if there be any material part of it competent, there is no error concerning it shown by the record.

We are not prepared, however, to hold that it was not all competent.     Wigmore on Evidence, Sec. 736, note 4, says the use of "a past recollection" (that is the testimony from memoranda which the witness made himself of observations at a time anterior to testifying and of the facts recorded by which he has no present independent recollection, but has a knowledge derived from the fact of his record) "is undoubtedly intended to be sanctioned" in Illinois, although "confusion has existed as to the scope and grounds of the rule."     The author groups in his note all the Supreme Court opinions in Illinois, treating of the matter.     We think his conclusion on the sanction in Illinois of the use of a memorandum containing "past recollection" correct.     The able opinion of Judge Pleasants in Lawrence v. Stiles, 16 Ill. App., 489, cited by counsel for appellant, although not binding on us as authority, commends itself in general to our approbation, and we think the learned judge was correct in holding in that case that the testimony which, without an independent recollection, a witness was prepared to give from inspection of his daily figuring book, should have been received.     "Although based on the writing and without actual recollection, they were not in the legal sense merely

matter of inference." In his opinion the learned judge
speaks of such memoranda as refresh the recollection of a
witness so that he can then speak from a present actual and
independent recollection, in which case the character of the
writing is immaterial, and of other memoranda where such
a recollection is not required, its place being supplied by
what is deemed equivalent as a ground of assurance and ac-
cepted from necessity to prevent a failure of justice. "Thus,
where a writing is an original, made at or about the time of
the occurrence, and the witness recollects that he has seen
it before, and that when he saw it he knew the contents to be
correct, his testimony to the fact itself is received as if it was
based on actual recollection, for his knowledge of it is thereby
shown to be actual and certain as well, though inferentially,
as if it were so based," is his language, and he quotes with
approval from Hare & Wallace's notes on Smith's Leading
Cases a statement justifying the admission of testimony
"where the witness after referring to the paper undertakes
to swear positively to the fact, yet not because he remembers
it, but because of the confidence he has in the paper."

In this case the memorandum was an original in the hand-
writing of the witness— made by him. He swore positively
as to the facts after producing and looking at the memo-
randum, and in direct examination said that after having
read it he remembered the condition of the elevator. Coun-
sel for appellant contend that this testimony was incompe-
tent because on cross-examination the witness said that he
was relying entirely "on this report of mine," and that aside
from that he had no recollection of what he saw "except as
I said before, the surroundings, the dampness and all that
and the rest I saw," and that he couldn't say that he had a
mental picture of what he saw on March 16, 1904, and be-
cause the witness did not state whether the memorandum
was made at the time of the inspection or shortly prior to the
giving of his testimony, nor whether he knew it to be full,
true and correct when he made it, nor whether he made it in
the line of his duty.

We do not think the appellant is in a position to make

this objection to the want of a description of the memorandum.

The witness testified that he was an inspector employed by the city of Chicago in the building department; that he went over to the Diamond Glue Company on March 16, 1904, four days after the accident; that he had a memorandum in his own handwriting, which had been in the custody of the building department ever since he made it, which would refresh his memory about it; that he was relying on it "as a report," and after seeing it could testify as to the condition of the elevator on March 16th.   There was certainly a very legitimate inference to be made from this testimony that the memorandum was made at the time or about the time he inspected the elevator and in the line of his duty.

The appellant's counsel objected to the witness stating when he produced the memorandum, what it was, and when counsel for plaintiff told the court that it was a part of the records of the city, he objected again.   The court then said, "The defendant has raised no objection to the memorandum itself," and the counsel for plaintiff desisted from further questioning concerning the character of the memorandum, saying "Very well."   Although after this the counsel for appellant cross-examined the witness carefully as to his lack of independent recollection, he placed his entire objection to the testimony on that point, and on the length of time between the accident and the examination, and made no inquiries as to the nature of the memorandum, nor indicated in any way that he dissented from the evident suggestion of the court that the memorandum was in itself admitted to be of the nature which could furnish an assurance to the witness of "a past recollection."

The testimony of Joseph Tomászewski is that he had notice that "the rope was rough" before the day of the accident; that it was in such a condition that "anybody could see it was out of order;" that he had looked at it two or three months before the accident, and that "it was very bad and everybody said that it would soon break."   This witness

testified through an interpreter.    He was not cross-examined as to the character of the roughness, nor what he more particularly meant by its condition being "bad" or "out of order," or what led him to the conclusion it would soon break.

Leonard testified that he thought he had oiled the cable on the morning of the accident and thought it was safe; that he never saw a broken strand in it until it broke; that it broke about the middle, near the roof.

Morehead testified that standing on the third floor a week or ten days before the accident, while the cable was in motion, he put his fingers on it and allowed the cable to pass through them to see whether it was sound and right, and he considered it safe—that no cable is smooth, but that there were no loose ends, nothing that was ruptured or broken that he could discover—no broken wires.

It is manifest, however, from the construction and position of the cable that he could not have passed through his hands the cable where the break occurred—indeed, not more than 15 feet of the cable could in that position have passed through his hands if he felt it during its entire travel.

Rabe testified that while he did not inspect the cable, he went on the elevator pretty nearly every day, and always then looked at the cable; that the cable looked smooth, there was no grease on it, that he never saw any strands or sticks or wires sticking out of it.

If Holway's testimony was properly before the jury, there can be no doubt that this evidence was sufficient to support the charge that the elevator appliances had been allowed to become defective by the defendant, and that the accident happened because of this.    Even without Holway's testimony, we think there was quite enough to go to the jury and enough to sustain the verdict when rendered.    It is not contended indeed that if the plaintiff had been a mere passenger upon the elevator the defendant might not have been held liable under the doctrine announced in the Hartford Deposit Co. v. Sollitt, 172 Ill., 222, and Springer v. Ford, 189 Ill., 430, and other cases, that the owner and operator of an elevator is held to the highest degree of care and diligence

for the safety of those carried, but it is urged that as the plaintiff was a servant of the defendant, no probative force whatever can be attributed to the fact that the cable broke and the checking appliances failed to work as indicating negligence on the part of the defendant.  This is not reasonable and is not the law.  The invariable presumption in favor of a passenger, which puts the burden on a common carrier to prove the fact that any accident occurring did not occur through his negligence, does not exist in favor of an employe, it is true, but nevertheless, as pointed out by this court in Fairbank Canning Co. v. Grimes, 24 Ill. App., 34, and in Armour v. Golkowska, 95 Ill. App., 492, it frequently happens that it is enough to make a *prima facie* case of negligence in favor of such an employe that "the thing causing the injury was under the management of the defendant or his servants and the accident was such that in the ordinary course of things it would not have happened if those having the management used proper care."

In Brimmer v. I. C. R. R. Co., 101 Ill. App., 198, Mr. Justice Freeman in the Branch Appellate Court of this District, distinguishing that case, said: "There are cases in which it is evident without the aid of legal distinctions that the mere fact of the occurrence of an accident indicates negligence on the part of those responsible for its cause.  In such cases the accident speaks for itself.  In other words, the accident is one which in the ordinary course of events without some absence of due care ought not to happen, and when it does happen the burden is put upon the party responsible for such care to show, if he seeks to escape liability, that it was not the result of his negligence."

Cases of this kind may occur as well when the plaintiffs are employes of the defendant as when they are not, and of such cases the one at bar is an example.  The plaintiff was a common laborer under the orders of a foreman, and although for a part of each day his work consisted of taking loads up on the elevator, he had no duty of inspection incumbent on him and no opportunity to perform it.  There was a duty binding the defendant to see to it that the place

and appliances where and with which respectively the plaintiff had to work were in reasonably good order and safe, and there is enough in this record to warrant the findings which, considering the instructions of the court, inhered in the verdict of the jury, that the elevator on which plaintiff was injured was not reasonably safe; that the defendant had notice or knowledge thereof, or ought to have had; that the plaintiff did not know that said elevator was unsafe, and had not equal means of knowing it with the defendant, and that the plaintiff exercised the care and caution which would have been exercised under like circumstances by a reasonably careful man to avoid injury, and that a want of such care and caution on his part did not proximately contribute to the injury. See Union Pacific Railway Co. v. O'Brien, 161 U. S., 451; Mulvey v. Rhode Island Locomotive Works, 14 R. I., 204; Swanson v. Great Northern Ry. Co., 68 Minn., 185.

The second count of the declaration charges negligence in ordering plaintiff to run the elevator without informing him of the dangerous character of the employment. The evidence to support this is that which tends to show that the foreman, Rabe, knew that the elevator was very much overloaded, while the defendant, not knowing its carrying capacity, was not aware that it was thus dangerously overweighted. We think that if there were satisfactory proof of these matters it would sustain the allegations of the count. The defendant by its foreman, in such case, must be held to have known a serious latent danger unknown to the plaintiff and of which it was its neglected duty to warn him. Sullivan v. Thorndyke, 175 Mass., 41.

It is not necessary, however, in our view of the case to pass on the sufficiency of the evidence under this allegation to sustain the verdict. It is true that as Rabe testified that he knew the carrying capacity of the elevator to be but 4,000 pounds, that may be considered proven. But the evidence that the truck and its contents which plaintiff was carrying on it weighed 8,500 pounds, consists entirely of the statement of the plaintiff in direct examination, and when

cross-examined at to how he made the estimate of the weight he answered only, "I should judge it was very heavy. This stuff was mixed with water and there was a lot of water in it and it was very heavy." This answer certainly throws grave doubt on the value of his testimony as to weight on his direct examination.

It is not necessary for us to discuss the testimony which is by counsel respectively pointed out as pertinent to the question whether the plaintiff assumed the risk. The instructions which were asked by the defendant involving the law on this question directly and indirectly were given, and for reasons which appear in our preceding discussion of the evidence, we see no ground for disturbing the verdict of the jury. It was a matter of argument to the jury—not something to ask the court to find—under the evidence in this case, that plaintiff, although charged with no duty of inspection, must have seen or could have seen what Tomaszewski testified he saw concerning the cable, and what Holway swore he saw about the dogs and spring.

It is insisted that neither the first nor second counts of the declaration is sufficient to sustain judgment even after verdict, and that therefore the motion in arrest of judgment should have been granted. There is no merit in this contention. Both counts are good after verdict, whatever might have been said of them on demurrer.

In the Clausen case, 173 Ill., 100, cited by appellant, and in the Kinnare case, 123 Ill., 280, we think the rules laid down are sufficient to cover this case. The purpose of pleading is accomplished when by intelligible allegations the opposing party is advised of the case to be made against him, and the approved doctrine of Chitty is that in declarations "certainty to a certain intent in general"—that is, "what upon a fair and reasonable construction may be called certain without recurring to possible facts which do not appear," is sufficient. Grace & Hyde Co. v. Sanborn, 124 Ill. App. 472.

To say that the plaintiff was an employe of the defendant, that it was the duty of the defendant to make its elevator

reasonably safe for persons lawfully riding on the same, and yet that it so negligently treated its elevator, by allowing its appliances to become defective, that while the plaintiff with due care "was rightfully upon the same it fell," seems to us to state a cause of action, even if defectively or without sufficient detail, and to allow the admission of evidence to supply the statement of what plaintiff was "rightfully" doing on the elevator to bring him within the duty which the plaintiff owed to persons "lawfully riding" on the same. It certainly answers the end of pleading in informing the defendant what it should be prepared to meet. And so too, although less clearly, the second count would be sufficient after verdict if the verdict was based on evidence that the dangers incident to the running of this elevator was that it was carrying 8,500 pounds, whereas it was only constructed to carry four, that the foreman knew this, and the plaintiff did not. Sullivan v. Thorndyke, 175 Mass., 41. But as we indicated in relation to the evidence supporting this count, we prefer not to rest our affirmation of this judgment on it. The verdict and judgment are sufficiently sustained by the first count.

The foregoing conclusions leave for consideration only the alleged excessiveness of the damages assessed by the jury and the objections made to the admission of evidence relating thereto.

There was no error in the admission of Dr. Kuflewski's testimony that the injury was painful at the time of the trial and, as permanent, would be in the future. It is by no means true, as argued, that a physician can know only from statements made to him by a patient that an injury is painful. A statement of subjective symptoms is generally required by a physician from a patient, it is true, if the patient is able to give one, and such a statement becomes one of the means of his making his diagnosis, but his expert diagnosis is not to be rejected for that reason. When a physician knows certain objective conditions he can of his own expert knowledge also tell what subjective symptoms the patient

Glue Company v. Wietzychowski.

must have.    He might be able properly to testify concerning them without even communicating with his patient.

It would extend this opinion to too great length to discuss in detail the expert testimony and the amount of the verdict in connection therewith.    The judgment seems to us large, and undoubtedly the expert witness for the plaintiff showed feeling in the case, concerning which it was proper to argue to the jury, and concerning which counsel probably did argue to the jury, as they have argued to us.    But after a very careful consideration of all the medical evidence and the arguments of counsel thereon, we cannot conclude that it is our duty to overthrow the jury's decision concerning the credibility and trustworthiness of the plaintiff and his doctor.    We have been cited by both appellant's and appellee's counsel to a report which appears in the transcript of the record, made by Dr. Beavan to the trial judge, of an examination of the physical condition of the plaintiff pending the consideration of the motion for a new trial.    We have not considered it, and do not feel at liberty to do so. The law does not provide for expert opinion in this form in judicial proceedings of this kind.    Upon the question of whether or not an agreement between counsel and between counsel and the court may have justified the consideration of this report on the motion for a new trial, we express no opinion.    Our duty is plain, however, to consider the ruling on the motion for a new trial as though it were made with no other expert testimony before the court than that which the jury heard under oath, and we have done so.

The judgment of the Circuit Court is affirmed.

*Affirmed.*