## Edward J. Rock, Appellee, v. J. E. Tilt Shoe Company, Appellant.

### Gen. No. 16,125.

1. MASTER AND SERVANT—*duty of former to warn.* If the failure of the master to warn and instruct his servant of a danger, which was or should have been obvious to such master and not to the servant results in injury to the servant, the master is liable.

2. NEGLIGENCE—*when burden upon master to show absence of.* Without invoking the doctrine *res ipsa loquitur*, yet if the accident be one which in the ordinary course of events would not have happened without negligence the burden is upon the master to show his lack of negligence.

3. VERDICTS—*when not excessive.* Held, in a personal injury action, that a judgment for $10,000 was not excessive where it appeared that the plaintiff sustained a swelling of the thyroid gland which had not entirely disappeared at the time of the trial, almost 3 years after the accident; that there was a fracture of the right femur, that there is a shortening of the right leg about an inch, and a limitation of its motion, that this has tended to cause a curvature of the spine, that these conditions are permanent, and that other results ensued in consequence of the accident.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. George A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed March 14, 1912. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an action by appellee to recover damages for personal injuries, in which the court entered judgment in his favor for $10,000.

The plaintiff's version of the facts relating to the injury is in substance that in June, 1906, he was in the defendant's employ as an errand boy at the defendant's shoe factory in Chicago. At the suggestion of an employe of the defendant whom the plaintiff says was the superintendent, the plaintiff, being then about seventeen years and eight months old, undertook to run one of the two elevators then used in defendant's

building. . He says the superintendent showed him how to operate the elevator and "how to pull the racks in" to it; that he was not to push the racks "on account of the hole where the bottom door went in the floor;" that he was told no one else had anything to do with the elevator, that he should leave it in the basement every night, because he could not get into it at the other floors and would have to go to the basement for it every morning; that in addition to running the elevator, it would be his duty to pull racks of shoes onto the elevator and take them from floor to floor. He had been doing this work in connection with running the elevator about three days when the accident occurred by which the injuries complained of were inflicted. This was the third day of his work with the elevator— June 13, 1906. He says he was on the first floor and was given shoes to take to the third floor; that he took the racks containing the shoes to that floor, where the heels were burnished; that it was then his duty to take them to the elevator; that he had "to pull the rack out," and that when he "got the rack straightened out" he turned around to see if he "was going in the elevator straight, and the elevator was there, and I pulled the rack back, and when I got near the hole I started to back the racks up and stepped back where I thought the elevator was and I fell in the basement. I did not hear nor do I know anything about the movement or shifting of the elevator before I stepped into this open shaft." He further says that while falling "I thought I saw somebody above me," that "it looked like somebody was up there; I could not say who it was. It seemed to me to be at the fourth floor. I could not tell just where it was when I was going down." He says that when on the third floor before he fell he looked around to see if he could get into the elevator properly, he was about three steps from the elevator shaft, and that the elevator was in its proper place at that time; that after that it could not have

been more than a few seconds before he stepped backwards into the shaft, and that during those few seconds he was pulling the rack, having hold of its "bottom and top shelf" pulling backwards to the elevator; that the rack was loaded and was heavy. He states that the doors that shut up and down and came together were a part of the shaft surrounding the elevator; that there were two iron doors, one-half going up and the other half down, and fastened by an iron catch or lock; that they "had counterweights on them and worked easy;" that they were not attached to the elevator at all; that he did not at that time know how to get into the elevator shaft from the outside, except in the basement, and that it was the ·defendant's superintendent "who showed me how to pull the boxes in the way I was pulling them at the time." It appears from the witness' statement that Corlette, the alleged superintendent, stayed with him on the elevator a good part of the forenoon and "showed me all about which cable to pull to stop the elevator and which to start it, all about all the cables and how to work the doors;" that "he took me from floor to floor and showed me this latch;" that Corlette and he "made about twenty trips up and down the elevator shaft that forenoon," "doing actual work that is, putting these racks on the elevator and putting them off on the other floors, and he helped me." The racks themselves were "a very light affair;" were about four or five feet high, made out of small pieces of wood and "run on small rollers." The elevator platform was about eight feet long and six feet deep and there was a railing "made of something like gas pipe" around three sides of the elevator. It appears that in some way the elevator had ascended at the time the plaintiff backed into the shaft, which the ascent of the elevator had left exposed and open. There is testimony tending to show that the president, the said superintendent and other officers of the defendant had quite frequently opened the elevator doors from outside the elevator by inserting

the blade of a penknife and pushing the catch back; that minor employes did the same thing on different floors, and that the elevator could be raised or lowered from any floor by one who had opened a door giving access to the elevator shaft.

There is evidence to the effect that the fall caused a swelling of the thyroid gland in the plaintiff's neck, which had not entirely disappeared at the time of the trial about June 14, 1909, almost exactly three years from the time of the accident; that there was a fracture of the right femur; that the "neck of the bone was fractured;" that there is a shortening of the right leg about an inch, and a limitation of its motions; that this has tended to cause a curvature of the spine; that these conditions are permanent; that at the time of the accident there was produced an effusion of some fluid, probably blood, in the abdomen, which afterward disappeared and that plaintiff was so nearly dead at the time it was impossible to treat him as would have been desirable had his condition then permitted. He was taken to a hospital where he remained two weeks and thence to his home, where he was confined to bed about three or four weeks, and it was some time in October following before he laid aside "both crutches and steel brace" and began to try to walk. "It was about two weeks after that before I could say I could walk around." He states that when thereafter he went back to work for the defendant he undertook to run a punching machine with his right leg; that the leg hurt so much that after awhile he worked only half a day; that "the leg bothered me, it would get tired out at the hip."

FRANK M. COX and R. J. FELLINGHAM, for appellant.

JAMES L. BYNUM and WILLIAM J. COLEMAN, for appellee; GUERIN, GALLAGHER & BARRETT, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

There are fifteen heads setting out counsel's contentions in behalf of the defendant company. The first of these is that the evidence with all it legitimately tends to prove is not sufficient to sustain the verdict in that it does not show that the proximate cause of the injury was negligence of the defendant. Others are that the evidence of appellee to the effect that as he fell down the shaft he was conscious and saw above him a face looking down the shaft is improbable and unbelievable; that it was incumbent upon appellee to prove that the elevator shaft and equipment were defective and that defendant had notice thereof or should have had, and plaintiff had not equal means of such knowledge, and that such defects were the proximate cause of the injury; that appellee assumed the risk arising from any dangers there were in the manner of doing the work, because he knew all the conditions or could have known them by the use of ordinary care; that where a servant is injured by another servant of the master he must prove by a preponderance of evidence that the negligent servant was not his fellow servant and that appellee in backing into the elevator shaft without ascertaining before he stepped that the elevator was not there was guilty of contributory negligence as a matter of law. There are other points stated, but they refer mainly to well understood propositions of law as to which there is no dispute, and the application of which in the case at bar is at least remote.

The first contention above stated, that the evidence fails to show that negligence of the defendant was the proximate cause of the injury, raises, we think, the controlling question in the case.

It is argued that the evidence does not prove any negligence on defendant's part, that plaintiff did not prove "that the elevator was moved by anybody who had opened the doors leading to the elevator shaft from the outside." No evidence was offered in de-

fendant's behalf. Plaintiff's evidence tends to show that it was a custom with certain of appellant's officers and employes to open doors to the elevator shaft from the outside by using the blade of a knife and raising the catch at such times as suited their convenience. Why this was done does not definitely appear, but the inference is warranted that it may have been to enable such person to use the elevator when the operator was not present or for some reason was out of the elevator at the time. By opening a door into the shaft on any floor the cable by which the elevator was controlled was brought within reach of one standing at the open door of the shaft on that floor and the elevator could then be raised or lowered by such person at will. There is testimony tending to show that plaintiff was informed that no one could open these doors on the outside and was told to do his work in the manner in which he was engaged in doing it at the time of the injury. He had no experience in operating the elevator, except that of the three days which had elapsed in whole or part after he was told how to do the work and was set to doing it. It is true the evidence does not show what, if any, particular person set the elevator in motion at the time. There is no testimony and no evidence tending to show that it ever moved automatically. So far as appears it probably was set in motion by the cable used for such purpose. If so, it was probably caused to ascend by human agency. The method plaintiff was instructed to use in loading the racks on the elevator was made extremely dangerous by the fact that the elevator doors could be and were, not infrequently, opened from the outside as the evidence tends to show. Instead of being warned of the danger that persons thus opening the doors might raise or lower the elevator while he was out of it to load or unload racks, the evidence tends to show plaintiff was not only not warned of the danger but was led by his instructor—inadvertently

doubtless, but actually—to suppose it did not exist. The jury were we think warranted from the evidence in finding that the failure to warn and instruct the plaintiff of such danger, obvious as it was or should have been to the employer, and the absence of precautions to prevent such injury, were negligence and proximate causes of the injury.

The burden to show the accident was not the result of such negligence was upon the defendant. We concur in what is said by Mr. Justice Brown in Illinois Steel Co. v. Swiercz, 135 Ill. App. 141-150: "We think that the case comes under the class of cases spoken of and cited in Glue Co. v. Wietzychowski, 125 Ill. App. 277, where without invoking the principle *res ipsa loquitur* in favor of an employe it can nevertheless be said that the mere fact of the occurrence of the accident indicates negligence on the part of some one. The accident was one which in the ordinary course of events without some absence of due care could not happen, and as it did happen the burden was put on the party responsible for such care to show that it was not the result of his negligence." That a door into the elevator shaft was opened at the time of the accident by some one on a floor above that at which plaintiff had left the elevator a few moments before, there is some evidence tending to show. Plaintiff testifies that he thought he saw some one looking down the shaft while he was falling. Defendant's counsel endeavors to minimize the force of this statement, declaring it incredible and asserting it to have been impossible that plaintiff could have seen while falling what he says he thought he saw. We know of no just ground upon which we are at liberty to ignore that testimony. Its value as evidence was a question for the jury. The identity of such person, if plaintiff did in fact see him, as he says he thinks he did, plaintiff could not be expected nor required to prove or ascertain as a condition precedent to admitting the evidence. In all prob-

ability it would have been impossible for him to do either. We are unable to concur in appellant's contention that the plaintiff was required to show what caused the elevator to move. It is sufficient that it did move without fault on the part of the plaintiff so far as appears, and under conditions which justify the conclusion that the injury was the result of defendant's negligence.

Nor can we agree with counsel's contention that plaintiff assumed the risk of such an accident, or was guilty of contributory negligence under the evidence. It is clearly not a case for application of the doctrine of fellow servant. If it was by reason of defendant's negligence that the doors of the shaft were opened and the elevator moved, it is immaterial who the person was who moved it. There is nothing in the evidence tending to show that it was done by one who was a fellow servant under the rule, but if there had been it would make no difference in a case where, as here, the evidence tends to show that the proximate cause of the injury was negligence on the part of the defendant. If "the injury would not have happened had the master observed due care for the safety of the injured servant, the master is liable." Armour v. Golkowska, 202 Ill. 144-147. Whether plaintiff was guilty of contributory negligence was a question of fact, as to which the jury did not agree with defendant's contention. It must suffice to say that we find no material error in the instructions.

It is said the judgment of $10,000 is excessive. We are unable to agree with this contention. The verdict of the jury awarded a considerably larger sum, which was reduced by *remittitur*. The judgment in view of the circumstances, the nature and the extent of the plaintiff's injuries, is not for an amount so large as to warrant our interference.

Finding no material error in the record the judgment of the Superior Court will be affirmed.

*Affirmed.*